[Crim. No. 10309.   Second Dist., Div. Three.   July 22, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. LEROY EUGENE DYKES, JR., Defendant and Appellant.

Michael Cullen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Charles R. Kocher, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Jointly accused of armed robbery, Leroy Eugene Dykes, Jr., and Ruben Frank Dorrough, Jr., were tried without jury; Dorrough was acquitted; Dykes was convicted and appeals; we appointed counsel.

The grounds of appeal are that the court erred in the receipt of evidence of Dykes' silence in the face of an accusatory statement; also that it was error to receive evidence of Dykes' withdrawn plea of guilty.

At 1 a.m., while parked in the Star-Lite Bowl in Burbank, a young man and his young woman companion were robbed at gun point by two men (at least one of whom was masked) who came and departed in a blue and light-colored Pontiac. After robbing the couple one of the men shot up the right front tire of the victims' car and both men went to the rear of the car and fired shots. The front tire was deflated and a "Beauty Rim" on the left rear wheel was shot off. Officers came to the scene; they found a .45 caliber semiautomatic casing near the right front wheel and three 9 mm. casings near the left rear wheel. Neither of the victims of the robbery identified either of the defendants at the trial. The defendants did not testify. There was evidence that the defendants were arrested shortly after the robbery and that a .45 caliber Remington semiautomatic and a 9 mm. Luger were found in the car. There was expert evidence that the shots fired into the victims' car were fired by the two guns taken from the defendants.

The court received, subject to motion to strike, and later struck out the following evidence of the discovery of the guns: about 4 a.m., on the morning of the robbery, two sheriff's officers who were patrolling the Angeles Crest Highway observed the defendants traveling southerly in a Ford car with two flat tires and bearing a Missouri license. The defendants

were halted; Dykes was driving the car and was asked for identification. He produced a Missouri operator's license and a draft card. When questioned as to the ownership of the car Dykes examined his wallet but produced no evidence of ownership. Officer Rowland suggested that Dykes might prove ownership of the car by describing the contents of the trunk. Dykes said he had left the trunk key in Missouri. He produced four keys and endeavored to insert three of them into the lock; none fitted and he then pretended to insert the fourth key. Officer Rowland observing that Dykes was not attempting to unlock the trunk suggested that he might try the key. Dykes handed him the keys; Rowland fitted the fourth key into the lock and opened the trunk. There he found the .45 caliber semiautomatic Remington and the 9 mm. Luger. He also found under the rear-seat cushion two rifles and in the glove compartment and in Dykes' pocket he found ammunition for the guns. The defendants were arrested and the officers took possession of the vehicle.

The guns were test-fired; casings were compared with casings found at the scene of the robbery and it was determined that the two guns had fired the shots into the car of the victims.

It was stipulated as hereinafter stated that Dykes was accused in the municipal court of violation of section 12025 of the Penal Code (carrying a concealed firearm in a vehicle without a permit) and that upon his trial in the municipal court evidence of his arrest and the seizure of the guns and ammunition was excluded upon motion of the defendant on the ground that the evidence had been illegally obtained. In the trial of the robbery charge it was contended by the defendants that the ruling of the municipal court was binding upon the court in the later trial under the doctrine of collateral estoppel. The court agreed and the evidence was stricken upon that ground alone. There then remained practically no evidence that the defendants had committed the robbery.

After the defendants were arrested the officers interrogated them separately. Dykes stated he had not been in Burbank; he had not been with Dorrough in the Pontiac in the vicinity of the Star-Lite Bowl and that he had been target shooting in the desert area. The officer also testified that immediately before bringing the defendants together for questioning he said to Dykes: ''We've already talked to Dorrough. You know that. I am going to get Dorrough. I am going to just ask him about two questions. In doing so, he is going to answer me right in front of you, and he's going to make a liar out of you right

now. If I were you, I wouldn't want this to happen to me. I'd rather take this thing on my own shoulders and not have to have it proved by a buddy of mine. It's up to you." ■ He also testified that in the presence of Dykes the following occurred: "I asked the defendant Dorrough if it wasn't a fact that he had just told my partner, Sartoris, and myself that he stated that he and Dykes had been in the Star-Lite Bowl area in his Pontiac on the evening of his arrest by the Sheriff's Montrose Deputies, and that they were drinking beer." An objection was made which was overruled. The witness answered: "The defendant Dorrough stated, 'Yes,' " that Dykes was seated alongside of Dorrough and that Dykes said nothing. There was no evidence that Dykes had been advised of his right to remain silent and to have the assistance of counsel. It was error to receive evidence of Dykes' silence in the face of the accusatory statement. (*People* v. *Cockrell,* 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116].)

■ The next point is that it was error to admit evidence that Dykes had pleaded guilty to first degree robbery and that his plea was withdrawn and a not guilty plea reinstated. In the trial the district attorney offered to stipulate that Dykes had pleaded guilty and that his plea had been withdrawn. At the suggestion of Dykes' attorney the court reporter was called and he read from his notes an account of the proceedings when the plea of guilty was withdrawn. The People contend that since the evidence came in at the request of defendant's attorney the incident cannot be assigned as error. We do not agree.

May 4, 1964, Dorrough was acquitted of the robbery charge and Dykes was found guilty. May 28, 1964, Dykes was sentenced to state prison. At that time it was well-settled that evidence of a withdrawn plea of guilty was admissible; many cases had so held. July 14, 1964, the Supreme Court in *People* v. *Quinn,* 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705], overruled the earlier cases and held evidence of withdrawn pleas of guilty to be inadmissible. The failure of defendant to object to the evidence does not bar him from claiming error. The admission of evidence of defendant's plea of guilty was not error at the time of the trial. If an objection had been made it would have been futile since it would have been the duty of the court to overrule it. In *Quinn* the District Court of Appeal had held evidence of the defendant's plea of guilty to be admissible. February 14, 1964, the Supreme Court had granted a hearing. The trial court in the instant case not

being blessed with extrasensory perception, was not put on notice that a new rule of evidence on the subject was about to be declared by the Supreme Court. (*People* v. *Natividad,* 240 Cal.App.2d 244 [49 Cal.Rptr. 437].)

▪ The errors in the receipt of evidence of appellant's silence in the face of an accusatory statement and in the admission of evidence of his withdrawn plea of guilty require reversal of the judgment. It appears from the statements of the judge that in his opinion appellant's silence and his plea of guilty furnished strong evidence of guilt.

▪ The People request that in the event of a reversal of the judgment we should decide whether upon a retrial evidence can properly be received of the arrest of Dykes, the seizure of the guns and the evidence of the ballistic tests. They contend that the court erred in holding that it was bound by the ruling of the judge of the municipal court in the exclusion of evidence. It is a proper request. (*People* v. *Ditson,* 57 Cal.2d 415, 431 [20 Cal.Rptr. 165, 369 P.2d 714]; *People* v. *Burke,* 47 Cal.2d 45, 54 [301 P.2d 241]; § 1252, Pen. Code.)

▪ We are of the opinion that the court misapplied the doctrine of collateral estoppel. ▪ It applies to the determination of questions of law or fact that are in issue and are fully litigated but not to merely evidentiary facts.

A statement of the general rules of collateral estoppel is found in section 68 of the Restatement of Judgments, reading: "*Questions of Fact.* (1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in §§ 69, 71 and 72. (2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action." The rules are stated with the qualification found on page 312 reading: "*p. Evidentiary facts.* The rules stated in this Section are applicable to the determination of facts in issue, but not to the determination of merely evidentiary facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary facts. *Illustration*: 14. A brings an action against B for breach of contract. B denies that he made the alleged contract. At the trial A testifies that on a certain day B signed the contract in New York. C testifies that he saw B in London on that day. Verdict and judgment for B. Thereafter A brings an action against B alleging that B assaulted A on the same day in New York. The judgment in

the prior action does not preclude A from proving that B was in New York on the day in question." It is assumed, of course, that in the first trial the reason for the judgment was that the court found that B was in London. This merely points out the distinction between facts that are in issue and merely incidental facts which the court decides in ruling upon the admissibility of evidence.

In the second trial of Dykes the court gave much thought to the applicability of the rule of collateral estoppel as discussed in *People* v. *Beltran*, 94 Cal.App.2d 197 [210 P.2d 238]. The opinion contains the following: "In *Frank* v. *Mangum*, 237 U.S. 309 [35 S.Ct. 582, 59 L.Ed. 969], the court stated that the fundamental principle that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction cannot afterwards be disputed between the same parties is as applicable to the decisions of criminal courts as to those of civil jurisdiction." The statement as paraphrased is unquestionably correct but the key words are "distinctly put in issue."

In civil litigation issues, whether of fact or law, are created by the pleadings and the pretrial order or by questions which are litigated as issues, and issues are made by the complaint or information and the plea of not guilty in criminal cases.

As we have seen, in the municipal court case of Dykes, the only factual issue was whether he had the guns in the car in violation of law, an issue which, admittedly, the court did not determine; there was no issue of law created by the complaint and the plea and the question of guilt was not submitted upon stipulated facts. We cannot ascertain from the record whether the offered evidence in the robbery trial was stricken upon the ground that the ruling in the former trial adjudicated an issue of fact or one of law. All that clearly appears is that the evidence was stricken for the reason that the municipal court had found that the search of the car was illegal.

The record does not disclose whether the evidence of the search and seizure in the municipal court trial was the same as that which was offered and stricken in the second trial, nor what facts were sought to be proved. As our opinion is given only as an aid to the court in the event of a retrial we must assume that the evidence would be the same as that which was offered in the robbery trial, and since there is nothing in the stipulation to the contrary, we assume, as the parties do, that the same evidence was offered in the former trial. Since the

evidence was suppressed in that trial it is evident that Dykes did not testify, that the testimony of the officers was not contradicted, and that the court ruled upon the basis of the facts to which they testified. The court, then, decided no essential question of fact, but only a question of law.

The complaint and the plea of not guilty created an issue of fact only of whether guns were concealed in the car without a permit. The court did not reach the point where it was required to determine that factual question, and as we have seen there was no issue of law created by the complaint and the not guilty plea. The question of the legality of the arrest was not an issue, as it would have been if the court had been trying an action by Dykes against the officers for false arrest. The question came in incidentally when the People's evidence was disclosed and it became apparent that they were relying upon the search of the car and discovery of the guns as proof of Dykes' guilt. The evidence was excluded upon the ground that the People had not laid a sufficient foundation for its admission, that is to say, they had not shown probable cause for the arrest and search.

A determination either of fact or law cannot be said to be an adjudication unless it settles a matter directly in issue. A question of fact becomes an issue when it is one which must be determined before the ultimate decision can be reached. Whether the search of Dykes' car was legal was not an essential question of fact. It related only to admissibility of the evidence. Proof of possession of the guns in the car could have been made in many ways, but each fact sought to be proved in the process would not be a fact in issue or, in other words, a fact the existence of which was essential to the judgment. The municipal court judgment or the ruling suppressing the evidence determined an incidental question of law; but it determined no issue of law or fact which had to be decided before the court could determine the issue of guilt, namely, whether Dykes had the guns in his car.

Moreover, the issues in the two trials were entirely different. In the robbery trial it was not an essential issue whether Dykes had violated the law by carrying a gun in his car. That was no element of the offense of robbery and the ruling by the municipal court did not determine or purport to determine any factual or legal issue that was developed in the robbery case. The issues were whether Dykes committed the robberies and whether he was armed at the time. Neither his guilt nor innocence of the other offense had any bearing upon those issues. The man who was one of the victims testified that the

robbers had guns and fired them. Evidence that guns were found in Dykes' car and the ballistic tests, only served to identify the robbers.

Only confusion and injustice would result from applying the doctrine of collateral estoppel to every ruling made preliminary to the receipt or rejection of offered evidence. Many instances of misapplication of the doctrine come to mind. One would be the exclusion of evidence which had been seized for the refusal of the People to name an informer, as the People have a right to do, at the expense of suffering a dismissal, and a later ruling of another court in another case holding itself bound by the former ruling. By such a ruling the People would be penalized, under the doctrine of collateral estoppel, from exercising an undoubted right of choice. We have already seen the injustice that can result from such an unrestrained extension of the doctrine. The evidence that was offered by the People would have conclusively established the guilt of both defendants. Dorrough has gone free on the strength of a ruling of the municipal court in Dykes' first trial which was held to be binding upon the court in the robbery trial. Dykes will also be turned loose to join Dorrough in preying upon the citizens unless the People, upon a retrial, are permitted to prove that he robbed his victims, which he unquestionably did, using the very guns that were taken from him.

In a retrial, if there is one, admissibility of the People's evidence should be ruled upon as if offered for the first time.

The judgment is reversed. The order denying a motion for new trial not being appealable, the purported appeal therefrom is dismissed.

Ford, J., and Kaus, J., concurred.