[Crim. No. 11654.   Second Dist., Div. Four.   Nov. 28, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. BILLY J. D. WELLS, Defendant and Appellant.

Billy J. D. Wells, in pro. per., Jay Plotkin and Rollyn J. Habeck, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant, together with James Nelson, was charged with a violation of Health and Safety Code, section 11531 (selling marijuana) on December 7, 1964 (count I), and a violation of Health and Safety Code, section 11530.5 (possession of marijuana for sale) on December 14, 1964 (count II). The public defender was appointed; a plea of not guilty was entered; the public defender was relieved and another attorney was appointed to represent defendant at the trial. Defendant withdrew the plea of not guilty to count II, pled guilty, and a probation report was ordered; a motion to withdraw the plea of guilty was granted and a renewed plea of not guilty was entered as to count II. The case proceeded to trial before a jury on both counts; defendant was found guilty; probation was denied; a motion for a new trial was made and denied; defendant was sentenced to state prison, the sentences on the two counts to run concurrently. He has appealed from the judgment. For reasons set out below, we reverse the judgment.

## FACTS

Arthur Longuevan, a narcotic agent, was working as an undercover agent. On December 4, 1964, he had a conversation with a man named Mathews, who was defendant's brother-in-law. Mathews had asked the agent how much narcotics the agent wanted; the agent said: "If I can get a pound of marijuana for $60, I have enough for two pounds." Mathews left, to return shortly saying: "Jay[1] is not there, but he should be around some place because his catering truck is there." No sale resulted on that date.

On December 7, 1964, the agent went to an address on Ruther Street in South Gate. He met Mathews there. The agent testified as follows:

"THE WITNESS: When Mathews approached me I was out of my state vehicle then. I met him as he came out the door on

[1]The evidence shows that defendant was commonly referred to as "Jay."

the front lawn. I said, 'Hey man, what was the hang up Friday night?'

"He says, 'I could not find my brother-in-law, but he is here now. Do you still want the deal to go down?'

"And I said, 'Yes, if I can get it for the same price, $60 a pound.' " After this conversation, Mathews entered the residence, returning a few seconds later with defendant and Nelson. Brief conversations followed between defendant and Mathews and between Mathews and the agent. The agent could not hear the conversation between defendant and Mathews. The result of these conversations was a direction by Mathews to the agent first to go to 3030 East Artesia Boulevard, an address which they had visited on the 4th, then, as a change in directions, to go to a designated hot dog stand (Pip's Drive-In). Defendant, Nelson and Mathews departed in a Thunderbird; the agent followed but lost the trail. He radioed to other agents to go to the Artesia address and drove to the hot dog stand.[2] There he was met by Mathews and was told to return to the Ruther Street address. They entered. Defendant and Nelson were sitting in the living room. Mathews asked defendant "where the stuff was" and defendant said, "It is in the kitchen." Mathews went to the kitchen, returned with a bag, the contents of which later proved to be 55 ounces of marijuana, enough to make 2,500 cigarettes. The agent paid Mathews $120 and left.

On December 14, 1964, agent Pizzo, armed with a search warrant,[3] searched the premises at 3030 East Artesia Boule-

[2]In response to agent Longuevan's radio call, agent Pizzo went to the Artesia Street address; he saw the Thunderbird parked nearby and saw three men leave that address and enter the car. He was too far away to identify them or to see what they carried.

[3]In his propria persona brief, defendant contends that the search was illegal because the warrant was based on an insufficient affidavit showing information from an informer who was not credible. No objection to the search, on any ground, was made in the trial court; the affidavit was not before the trial court and is not before us. The point is not available on appeal.

Nor can it be said that the failure to raise this issue at the trial amounted to inadequate representation.

As has often been pointed out, whether or not to attack the validity of a search, whether by raising issues of reasonable grounds for a nonwarrant arrest or by way of a traverse of the affidavit underlying a warrant, is a matter of trial tactics, of great delicacy and on which the decision of counsel must prevail on appeal. The attack will inevitably bring out the very kind of bad character that a defense usually bends every effort to keep out of the record and only counsel can determine whether the chances of success outweigh the certainty of prejudice. Except in an extreme case, supported by extreme facts of record, an appellate court may not second guess the trial counsel. (*People* v. *Garrison* (1966) 246 Cal.App.2d 343, 350, 356 [54 Cal.Rptr. 731].)

vard and found marijuana in loose form and marijuana cigarettes. A Miss Turley, a man named Sanders and a juvenile were present. During the search, defendant entered the apartment. Defendant was informed of his rights and asked if he lived in the apartment. He said that he did.

Defendant's defense was that he drove a catering truck on December 7 and was visiting his sister, that he went home to change his clothes and Nelson went along, and that when he went to Pip's Drive-In he did not know the purpose of the meeting. Defendant also said that, although he watched a transaction in the apartment, he did not know that a sale was going on, that he had nothing to do with the sale, that Mathews had asked him, "Where is Ann," referring to defendant's sister, and that he had replied that she was in the kitchen. As a defense to count II, defendant testified that he had been away from home the previous weekend (December 14th being a Monday), that Sanders had moved in during his absence, that the marijuana belonged to Sanders and that he knew nothing of it.

During the trial, an official court reporter was allowed to testify that defendant had previously pled guilty to count II. No objection was made to that testimony. In testifying in his own defense, defendant claimed that he had pled guilty to count II because he thought that he was liable because the marijuana was in his apartment, although he knew nothing of it.

In the brief filed on defendant's behalf by his court-appointed counsel, and in a supplementary brief filed by defendant in his own behalf, the following contentions are made: (1) that the evidence was insufficient to support the verdict; (2) that the court failed to instruct on the defense of entrapment; (3) that the court erred in admitting hearsay evidence at the trial; and (4) that it was error to permit reference to the withdrawn guilty plea.

I

Defendant suggests that the evidence is insufficient to support the verdict because agent Longuevan was not cross-examined, because the prosecution did not call Mr. Mathews as a witness and because the officer's testimony against defendant was uncorroborated.  ■  There is no compulsion on the prosecution to call any particular witness so long as there is fairly presented to the court the material evidence bearing on the charge for which the defendant is on trial.

468

(*People* v. *Smith* (1959) 174 Cal.App.2d 129, 134 [344 P.2d 435] ; *People* v. *Williams* (1959) 174 Cal.App.2d 175, 184 [344 P.2d 45].) ▮ Further, the prosecution in a narcotics case need not call a corroborating witness to support the testimony of the police officer, since this is not the type of case that requires corroboration. (*People* v. *Price* (1959) 172 Cal.App. 2d 776, 780 [342 P.2d 437] ; *People* v. *Smith* (1959) 175 Cal. App.2d 396, 399 [346 P.2d 484].) There is nothing to support defendant's contention that agent Longuevan was unavailable for cross-examination or should have been cross-examined.

▮ Whether counsel for defense cross-examines a witness is a matter of strategy decided upon by defense counsel according to the circumstances of the case.

▮ The evidence adduced by the People was sufficient to support the verdicts on both counts. If agent Longuevan is believed, defendant at least aided and abetted in a sale of marijuana on December 7th, and the jury was entitled to infer knowing possession of the narcotics found on December 14th from defendant's admitted dominion over the apartment.

## II

▮ The Attorney General properly admits that it was error to admit testimony as to the withdrawn guilty plea. (*People* v. *Quinn* (1964) 61 Cal.2d 551, 554 [39 Cal.Rptr. 393, 393 P.2d 705] ; *People* v. *Padden* (1965) 238 Cal.App.2d 708, 715 [48 Cal.Rptr. 311].) He argues that the error cannot now be raised because no objection was made at the trial, and because the error was nonprejudicial. Since the trial was in 1965, over a year after the decision in *Quinn,* defendant cannot claim the benefit of the doctrine (announced in *People* v. *Dykes* (1966) 243 Cal.App.2d 572, 575-576 [52 Cal.Rptr. 537], with reference to the *Quinn* rule) applicable to trials occurring before the date of the *Quinn* decision. However, the error is one which goes to the fundamental fairness of the trial; if it contributed to an unfair verdict, we cannot ignore it here.[4]

## III

▮ The contention with reference to entrapment is without merit. Where a police agent merely makes an opportunity available for a defendant to commit a crime there is no

---

[4]It must be noted that the error was one which could not have been cured by any admonition to the jury or by a motion to strike. Further, the deputy district attorney was as chargeable with knowledge of the decision in *Quinn* as was the defense counsel; he should not have offered the evidence at all.

entrapment. (*People* v. *Cordero* (1966) 240 Cal.App.2d 826 [49 Cal.Rptr. 924].) The record here shows nothing beyond this.

## IV

It was error to admit the testimony by Longuevan as to conversations with Mathews outside the presence of the defendant. It is true that this testimony was offered, and was received, as part of the *res gestae* and not as evidence of defendant's guilt, and that the jury was so instructed. However, these conversations were not necessary to make the evidence of defendant's conduct involved in count I intelligible; Longuevan could as easily have recounted the events in which he had participated without reciting what Mathews had said to him. The Attorney General relies on *People* v. *Dalton* (1959) 172 Cal.App.2d 15 [341 P.2d 793]. But, in that case, the defendant had sent the agent-witness to the third party, saying that that party would "take care of" the agent. No such evidence of involvement between defendant and Mathews appears in this record. In spite of the attempt to limit its purpose, the evidence that defendant's own brother-in-law had implicated him could not have had other than a prejudicial effect, and an effect not balanced by any necessity.

## V

While, as we have said, the evidence for the prosecution was sufficient to sustain the verdicts, the case is one which depends, as to count I, solely on the credibility of defendant as against Longuevan, and, as to count II, solely on inferences based on nothing more than defendant's joint possession of the apartment. Defendant's account of the count I episode and his explanation for the presence of the narcotic in his apartment were not incredible; had the jury believed him, it would have acquitted. Under these circumstances, the erroneous interjection of evidence of Mathews' hearsay accusations and of the withdrawn plea of guilty, even though the hearsay was supposedly limited as to its purpose and the plea was "explained,"[5] might well have been the factors which tipped the scales of credibility against defendant. We think that probability great enough to require a new trial in which the prosecutor does not offer evidence condemned by Supreme Court decisions which it was his duty to know and to follow.

[5]The explanation was something less than helpful, since it required defendant to emphasize to the jury the very theory of joint possession on which the prosecution relied.

## VI

Since we must reverse for the reasons stated, it is unnecessary for us to consider the applicability of section 654 of the Penal Code.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.