STATE, Plaintiff, v. CADDEN, Defendant.

*No. State 84. Argued October 5, 1972.—Decided November 9, 1972.*
(Also reported in 201 N. W. 2d 773.)

For the plaintiff there was a brief and oral argument by *Robert H. Bichler* of Racine, counsel for the Board of State Bar Commissioners.

For the defendant there was a brief by *John H. Ames* of Milwaukee and oral argument by *Mr. Ames* and *Anthony V. Cadden* of Milwaukee.

PER CURIAM. This is an original action commenced upon the complaint of the Board of State Bar Commissioners seeking the suspension of Anthony V. Cadden from the practice of law for reasons of mental illness. The action was commenced on November 15, 1971. The complaint alleged that Anthony V. Cadden, an attorney licensed to practice under the rules of this court, was mentally ill and incapable of practicing law. Pursuant to the rules of this court sec. (Rule) 256.286, 48 Wis. 2d xiv, it asked for the suspension of Attorney Cadden's license until such time as he was restored to health. An answer was filed with this court on December 1, 1971. EDWARD G. MINOR, Reserve County Judge, was appointed on December 7, 1971, as referee to hear the matter.

On December 20, 1971, this court issued an order directing Attorney Cadden to show cause why an attorney should not be appointed to represent him and why this court should not appoint medical examiners to determine the state of his mental health. The order was returnable on December 23, 1971. On that day Attorney Cadden appeared before the court in opposition to the proposed order. On that same day this court ordered the appoint-

ment of Attorney John H. Ames of Milwaukee to represent Attorney Cadden in these proceedings.

On March 24, 1972, this court ordered Attorney Cadden to appear for examination before two psychiatrists appointed by this court. Commencing on May 5, 1972, a hearing on the merits of the complaint was held by Judge MINOR as referee.

On June 26, 1972, the referee filed a report with this court containing proposed findings of fact and a recommendation that Attorney Cadden be suspended from the practice of law until such time as his present condition of mental illness was corrected by proper treatment. The Board of State Bar Commissioners has moved for a judgment of suspension on the basis of the referee's report, and Attorney Cadden has moved that the recommendation be set aside or, in the alternative, that he be granted an additional hearing.

Attorney Cadden's initial contention is that the referee's decision should be set aside because the two doctors who were appointed to examine him were appointed without hearing and without "probable cause" to support the complaint.

Counsel contends that due process required the court to provide a hearing before ordering Attorney Cadden to submit to a psychiatric examination; however, a hearing was held for that very purpose on December 23, 1971. Attorney Cadden was given notice of that hearing. He appeared and personally argued that the complaint be dismissed and he opposed the Board of State Bar Commissioners' petition for appointment of psychiatrists and for appointment of counsel. At the hearing Attorney Cadden was given a complete opportunity to present his case. He included therein arguments why the psychiatric examination was not necessary, and he filed statements which purported to show he was not mentally ill. At that time it was apparent from Attorney Cadden's confused

and inappropriate arguments that there was a substantial factual basis that tended to support the allegations of the complaint that Attorney Cadden was mentally ill, that a psychiatric examination was warranted, and that he required the assistance of counsel in these proceedings.

At that hearing Attorney Cadden attempted to explain the allegations of the complaint in respect to his conduct as a lawyer. This court has general supervision over the practice of law in the state of Wisconsin, and the members of this court are charged with the duty of familiarizing themselves with the appropriate conduct of attorneys in their representation of causes and clients in this state. It was apparent that the reactions of Attorney Cadden revealed during the course of that hearing showed inappropriate and bizarre responses to routine legal matters. The conduct of Attorney Cadden, although at all times gentlemanly and respectful of the court, was so unusual that it revealed a solid foundation for determining that a psychiatric examination was warranted.

Despite this court's order of March 24, 1972, Attorney Cadden, in fact, never submitted to the court-appointed psychiatrists for the directed examination. Attorney Cadden appeared at each psychiatrist's office prior to the appointed time, talked briefly to them, and then reported to this court in respect to the facilities and physical arrangements of their offices and gave his opinion of the status of the practice of psychiatry. This report to the court in response to the order for him to submit to the psychiatric examinations revealed an additional bizarre and inappropriate response.

Although Attorney Cadden did not submit to the psychiatric examinations that were proposed, the two psychiatrists testified about his appearances in their offices and reached their conclusions in regard to Attorney Cadden's health on the basis of those appearances and on the facts made apparent during the course of the hearing before the referee.

Prior to the appointment of psychiatric experts, Attorney Cadden was given a hearing that fully comported with all of the elements of due process. Moreover, he never submitted to the psychiatric examinations that were ordered.

At the hearing before the referee on May 5, 1972, on the merits of the complaint, Attorney Cadden refused to acknowledge John H. Ames as his appointed counsel. The referee permitted Attorney Cadden to question and cross-examine witnesses, but in addition recognized Attorney Ames as having been properly appointed by this court.

At the hearing both physicians testified that Attorney Cadden was suffering from schizophrenia. They based their diagnosis on their observations of Attorney Cadden at the hearing, on the meeting with Attorney Cadden at their offices, on their observations of him at the hearing, and on the testimony of other witnesses during the course of the hearing in respect to his conduct. Both psychiatrists were in the courtroom during the entire course of the proceedings. Although Attorney Cadden objected to the testimony of the psychiatrists, the opinions of both were admissible, since they were based upon the undisputed testimony of witnesses who preceded them at the hearing. *Rabata v. Dohner* (1969), 45 Wis. 2d 111, 122, 172 N. W. 2d 409.

Objection was also made to the portion of the psychiatrists' testimony based upon court records containing medical information pertinent to the mental health of Attorney Cadden during the course of other proceedings. This court has, however, consistently held that a physician may properly testify and support a diagnosis, the foundation for which is gleaned in part from medical evidence of which he has no personal knowledge and which is obtained from the medical reports of others. *Roberts v. State* (1969), 41 Wis. 2d 537, 549, 164 N. W. 2d 525; *Vinicky v. Midland Mut. Casualty Ins. Co.*

(1967), 35 Wis. 2d 246, 254, 151 N. W. 2d 77; *Sundquist v. Madison Railways Co.* (1928), 197 Wis. 83, 87, 221 N. W. 392. We have previously held that, since in their daily practice physicians normally rely on the facts and opinions of other experts, courtroom testimony, when based on the medical observations and findings of others, is sufficiently reliable to permit medical conclusions. This exception to the hearsay rule comports with accepted standards of medical practice. Moreover, in this case, the conclusions of the psychiatrists were based not only on the opinions of others but upon their personal observations of Attorney Cadden at the hearing. The testimony was admissible under the rules of evidence of this state and was reliable. *Rupp v. Travelers Indemnity Co.* (1962), 17 Wis. 2d 16, 20, 115 N. W. 2d 612; McCormick, *Evidence* (2d ed. hornbook series), pp. 35, 36, sec. 15. The psychiatrists were submitted to extensive and unrestricted cross-examination by Attorney Cadden and by his counsel.

The testimony in support of the allegations of the complaint was extensive.

An employee of the Gimbel's Department Store testified that on October 21, 1971, Attorney Cadden became involved in a lengthy discussion with store employees when he tried to exchange some bed sheets which he had purchased earlier in the day. Cadden insisted on exchanging the sheets for a larger and more expensive set without paying the difference in price. Eventually, Cadden paid the balance and left the store. On the next day, however, he presented a bill to Gimbel's for legal services. The statement read:

"For professional services October 21, 1971: legal counsel and advice on October 21, 1971 given to your sheet department and your customer service department at the Gimbel's Department Store located at 101 West Wisconsin Avenue, Milwaukee: $5,000.00. Balance due and owing: $5,000.00"

At the hearing, Attorney Cadden objected to the testimony of Gimbel's employees, claiming that they were prejudiced. He stated, "This man owes me attorney fees, Your Honor. His company owes me attorney fees."

The chief deputy clerk for the Milwaukee Children's Court testified that Attorney Cadden had been appointed by the court to represent a family involved in a court matter. He was paid in full for those services; however, almost eighteen months later, on August 18, 1971, Attorney Cadden submitted a bill of $5,000 for services.

At no time did Attorney Cadden deny that he submitted these bills, and at all times during the hearing insisted that the billings were appropriate.

An employee of the Milwaukee County Bar Association testified that in July of 1971 Attorney Cadden came into the kitchen of the Bar Association's coffee shop.

"[He] walked in and started yelling and hollering and saying that he wanted to see the roast beef cook, and I said you mean Mike, the chef. He said whoever makes the beef . . . . then he started yelling and saying that we were poisoning him, that we put arsenic and cyanide in the roast beef. He could taste it in his coffee . . . ."

A bailiff of one of the criminal courts testified that, on an occasion just prior to the opening of the court, Attorney Cadden addressed the spectators and parties waiting in the courtroom in respect to his career as an attorney and about his relatives.

There was testimony that in a probate case, after the services were rendered, the client had asked for the return of certain papers. Although the testimony showed that the call had been received by an answering service, nevertheless Attorney Cadden submitted a bill for $100 for the telephone conversation.

The record of a criminal case was introduced which showed that Attorney Cadden interjected himself into the proceedings in the circuit court apparently in the belief that he was the attorney for the defendant al-

though in fact other counsel had been appointed and was present. Despite the circuit judge's repeated admonitions to Attorney Cadden, he persisted in playing the role of the defendant's attorney, although he was a complete interloper in the proceedings.

Additionally, Dr. Joseph E. Weber, one of the court-appointed psychiatrists, testified. He stated that he had seen Attorney Cadden briefly in his office on the date that he appeared without an appointment. Dr. Weber stated that Attorney Cadden said that there was nothing wrong with him, that he had no mental illness, and that he, Cadden, was very distinguished and was an expert in many fields, including medicine. Dr. Weber testified that, in his opinion, Attorney Cadden suffered a chronic mental illness in the form of schizophrenia. He based his opinion on the observations of Attorney Cadden in court on the day of the hearing, on the testimony of other witnesses, and on county court records in regard to previous inquiries in regard to Attorney Cadden's mental condition. He stated that in his opinion Cadden's illness impaired his ability to perceive and evaluate reality. He stated that Attorney Cadden's judgment and ability to make decisions was impaired. Dr. Weber stated that Attorney Cadden's schizophrenic condition manifested itself in repetitiveness and in feelings of grandiosity and persecution. On cross-examination, in response to the questions of Attorney Ames, Dr. Weber stated that Attorney Cadden's condition was susceptible to treatment but was complicated by Cadden's refusal to admit that he had any problem. During the course of the psychiatrist's testimony, and after the referee had ruled that the psychiatrist could testify as an expert, Attorney Cadden made the statement, "I'm an expert on my own condition. I'm just fine."

Dr. James R. Hurley, a neuropsychiatrist, also testified. He too had first met Attorney Cadden when he made an

unexpected appearance at his office. He stated that on that occasion Cadden's conduct had been threatening and had frightened the doctor's secretary. Dr. Hurley testified that Attorney Cadden was suffering from a major medical illness in the form of chronic schizophrenia. His opinion was based on his observations of Cadden in court and the testimony of the other witnesses in regard to Cadden's conduct.

Attorney Cadden's defense was limited to a handwritten note obtained from a physician which stated:

"To Board of State Bar Commissioners: I have seen and talked to Atty. Anthony V. Cadden today and many times in past. I have felt that he is able and competent to carry on his work, even though he never has been my lawyer and I am not a psychiatrist."

This physician was not called to testify, and no witnesses were called in Attorney Cadden's behalf. Cadden, however, conducted an extensive cross-examination of each of the state's witnesses. Although he disputed the opinions of the psychiatrists, he at no time disputed any of the factual matters testified to by any of the witnesses.

In matters involving the suspension of an attorney from the practice of law in Wisconsin, the allegations must be proven by clear, satisfactory, and convincing evidence. *State v. Preston* (1968), 38 Wis. 2d 582, 157 N. W. 2d 615, 159 N. W. 2d 684. Where mental illness is alleged, the same burden of proof is applicable. It is apparent to this court that Cadden's conduct was unusual and inappropriate for an attorney and is only explainable by mental illness. There is no evidence whatsoever that Attorney Cadden was intentionally overreaching in his dealings with his clients or by excessive billings was involved in unprofessional conduct, as the term is usually understood. From the evidence and from the expert medical testimony of the psychiatrists who appeared, we conclude that Attorney Anthony V. Cadden is mentally

ill, that he fails to perceive reality, and that he is unable to react appropriately to even the most commonplace transactions of a legal practice.

The record reveals Attorney Cadden's mental instability not only at the times related by the witnesses but during the course of the hearings conducted by this court and the referee. During the direct examination of one of the psychiatrists, Attorney Cadden repeatedly interrupted the testimony with accusations that the psychiatrist was "incompetent," that his testimony was "in violation of the law," and that the doctor appeared "sick." He persistently contended that the complaint against him had already been dismissed by a former member of the supreme court and that the counsel for the Board of State Bar Commissioners had been reprimanded by the supreme court for bringing this action. It is clear from the record that Cadden lacks the ability to perceive reality and to make rational judgments. One of the psychiatrists referred to grandiosity as being a symptom of Attorney Cadden's condition. The record illustrates the psychiatrist's observation. In his summation to the referee, Attorney Cadden stated:

"My records go back as impeccable, honest, back to the very essence in the beginning in which I conducted hearings as a leader of the Milwaukee Bar Association as a leader of the State Bar, which I am presently, as a leader of the entire bar of the United States of America, which I am, Judge, I am registered in the white house as an attorney."

We are satisfied there is clear, satisfactory, and convincing evidence that Attorney Cadden is presently mentally ill and that such mental illness renders him unfit to practice law at this time. We conclude that to permit him to continue in the practice of the law would be dangerous to the interests of his clients and the interest of the public. In the brief submitted by Attorney Ames he states that Attorney Cadden is currently receiving

treatment for his illness. In the past, Attorney Cadden has been a competent, trusted, and valuable member of the bar, but until such time as he is restored to mental health and he has regained those qualities, we are obliged to suspend him from the practice of law.

Attorney Cadden's license to practice law is suspended until such time as by order of this court he is found mentally able to resume his practice. Such suspension shall continue, however, for a period of not less than six months. Thereafter Attorney Cadden may petition for reinstatement. If it then appears that Attorney Cadden has received appropriate medical treatment, is restored to mental health, and is able to resume the practice of law, he may be reinstated.