SCHLEISS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 206 (1974). Argued February 4, 1976.—*
*Decided March 2, 1976.*
(Also reported in 239 N. W. 2d 68.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. We set forth only those facts relevant to this review, some at this time and others in considering the issues raised by the defendant.

A second alleged party to the crime, Ronald Mathwick, was tried in a separate proceeding, which took place prior to defendant's trial. Mathwick was adjudged not guilty. The defendant moved the court for dismissal on the ground that the issue to be tried had been fully litigated in the case of *State v. Mathwick* and, thus, the state was foreclosed from relitigation of the alleged criminal violation with respect to defendant. This motion was denied.

In both the trial of this defendant and that of Mathwick, one of the main witnesses for the state was Deland Powers. During the course of the trial, outside the presence of the jury, counsel for defendant offered the testimony of Dr. Edward Orman, a psychiatrist. This offer of proof related to the reliability of Powers' testimony. The court determined that Dr. Orman's testimony should not be admitted, because of lack of proper foundation. Counsel for the defendant then requested that Dr. Orman be allowed to conduct a psychiatric examination of Powers. The court denied this request, basing the determination on prior case law, the fact that no motion for examination had been previously made, and the length of time required for such an examination while a jury trial was in progress.

The initial portion of the prosecutor's closing argument was not recorded. However, the record shows that counsel for the defendant moved for a mistrial based on a comment made by the prosecutor, which the defendant alleges referred to defendant's failure to testify. The court denied the motion; however, the jury was instructed that no adverse inference was to be drawn from the fact that defendant did not testify.

This review presents the following issues:

1. Did the circuit court lack subject matter jurisdiction in this case?

2. Was the trial of this defendant barred by the doctrine of collateral estoppel?

3. Was it error for the court to refuse to admit psychiatric testimony regarding the reliability of a particular witness?

4. Was it error for the court to refuse to allow a particular witness to submit to a psychiatric examination?

5. Was it error for the court to refuse to grant a mistrial on the grounds of allegedly improper remarks made by the prosecutor during closing argument?

*Subject-matter Jurisdiction.*

Defendant was charged with violation of sec. 943.10, Stats.:

". . . (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:
"(a) Any building or dwelling; . . ."

The criminal information charged defendant with the following criminal acts:

". . . [T]he defendant did: feloniously and burglariously [sic] intentionally enter a building, to wit: Forest Feed Mill, Inc., located at village of Forest, in said county, and the office within said building, then and there occupied by the Forest Feed Mill, and with intent then and there to steal the property of the said Forest Feed Mill, Inc. contrary to section 943.10, Wisconsin Statutes. . . ."

The information did not contain the statutory language, "without the consent of the person in lawful possession." Thus, the defendant argues, the information did not allege all of the material elements of the crime charged and,

therefore, the trial court lacked jurisdiction and the proceedings were void.

Several recent decisions of this court have discussed the effect of failure to include a specific element of an alleged criminal violation in the complaint or information. In *Clark v. State* (1974), 62 Wis. 2d 194, 199, 200, 214 N. W. 2d 450, the information:

". . . alleged that the defendant was feloniously involved in the commission of the murder of Troy Pulliam, a human being, contrary to the form of the statute, sec. 940.01 and sec. 939.05."

Certain material elements of the crime charged were not specifically set forth in the information. However, this court noted, relying on *State v. Bachmeyer* (1945), 247 Wis. 294, 19 N. W. 2d 261, that reference was made in the information to the statute containing the substantive elements of the crime charged. The incorporation of the statutory section was deemed sufficient to comply with the requirement that all material elements of the alleged violation be set forth in the information. Therefore, it was concluded that:

". . . the information, although not a model of draftsmanship, fully advised the defendant of the nature and cause of the accusation against him. The accusation was such that the defendant could and did intelligently and knowingly enter a plea and prepare a defense. *Holesome v. State* (1968), 40 Wis. 2d 95, 102, 161 N. W. 2d 283. The trial court had jurisdiction, both as to the subject matter of the trial and the person of the defendant." *Clark v. State, supra,* pp. 203, 204.

In *State v. Nowakowski* (1975), 67 Wis. 2d 545, 227 N. W. 2d 697, defendant was charged with failure to report a campaign contribution, contrary to secs. 12.09 (1) and 12.09 (3) (a), Stats., 1971. It was contended that the indictment therein was void because it failed to allege a material element of the crime, pages 568, 569. This

court held that because the statute allegedly violated was cited by number in the indictment, the indictment was not jurisdictionally void, page 571.

In both *Clark, supra,* and *Nowakowski, supra,* collateral circumstances relating to lack of prejudice to the defendant were emphasized. Thus, in *Clark,* it was pointed out that defendant did not contend that he was not fully aware of the nature and cause of the accusation against him. It was noted, moreover, that the rights of the defendant had not been prejudiced in any way. *Clark v. State, supra,* p. 200. In *Nowakowski, supra,* pp. 571, 572, this court recognized that, beside the fact that the statute had been cited by number in the indictment, the requirement of proof of the omitted element had been stated by the trial court prior to trial. In addition, the jury had been properly instructed on the nature of the missing element.

A review of these cases demonstrates that although a poorly drafted information produces unnecessary litigation, the failure to specifically allege a material element of the crime within the factual statement contained in the information does not *ipso facto* render the information void, if the statute which contains the substantive elements of the offense is cited therein. The statutory cite is incorporated, the defendant is adequately apprised of the nature and substance of the charge, and thus is not prejudiced by the omission from the factual statement of a substantive element of the alleged violation.

The defendant relies, in part, on *Champlain v. State* (1972), 53 Wis. 2d 751, 193 N. W. 2d 868, wherein it was determined the trial court was without jurisdiction because of a fatally defective complaint. In *Champlain* the defendant was charged with armed robbery contrary to sec. 943.32 (2), Stats. Sec. 943.32 (2) increases the maximum penalty for robbery, as defined by sec. 943.32 (1) from 10 years to 30 years when the act is committed

while the defendant is armed with a dangerous weapon. The problem was presented in *Champlain* because sec. 943.32 (1) defines two separate and distinct crimes of robbery, one in subsection (a) and a second in subsection (b). The information did not allege which of the two possible crimes of robbery the defendant was alleged to have committed while armed with a dangerous weapon. Such is not the situation in the instant case. *Clark v. State, supra,* p. 203.

The defendant also directs our attention to *State v. Reichert* (1975), 67 Wis. 2d 69, 226 N. W. 2d 196, in which the defendant was charged with possessing for sale obscene material, contrary to sec. 944.21, Stats. Consistent with the policy of this court in criminal obscenity cases, it was stated in *State v. Reichert, supra,* p. 73:[1]

"In *State v. Schneider* (1973), 60 Wis. 2d 563, 211 N. W. 2d 630, we held that an allegation of scienter, or criminal intent, in a criminal complaint was a jurisdictional prerequisite in obscenity cases and that, absent such allegation, the complaint charges no offense known to law and the proceedings are void *ab initio* . . ."

The required allegation of scienter or criminal intent as a jurisdictional prerequisite in obscenity cases evolves from the dimensions of first amendment rights as they relate to statutes which control obscene material, *State v. Clark, supra; State v. Nowakowski, supra.*

In the instant case the allegations of the information and the direction to the specific statutes fairly informed the defendant of the charges against him and all the substantive elements of the crime. He was able to and did defend on the specific offense charged. His conviction enables him to plead it in bar of future prosecutions for the same offense. He was fully informed of the nature of the charges against him and no prejudice to

[1] *State v. Green* (1973), 60 Wis. 2d 570, 211 N. W. 2d 634; *Madison v. Nickel* (1974), 66 Wis. 2d 71, 83, 223 N. W. 2d 865.

the defendant has occurred. *Hamling v. United States* (1974), 418 U. S. 87, 94 Sup. Ct. 2887, 41 L. Ed. 2d 590, rehearing denied 419 U. S. 885, 95 Sup. Ct. 157, 42 L. Ed. 2d 129.

The trial court had subject-matter jurisdiction.

### Double Jeopardy.

The defendant contends that the acquittal of Mathwick, a second alleged party to the crime, bars subsequent prosecution of this defendant for the same crime. This contention is grounded in the claim that the double jeopardy provisions of the state and federal constitutions bar prosecution through the doctrine of collateral estoppel. Defendant asserts that the culpability of Mathwick and defendant turned on the credibility of the state's primary witness, Deland Powers. Because the jury refused to credit Powers' testimony at Mathwick's trial, defendant urges that the doctrine of collateral estoppel prohibits Powers' testimony from being credited as to defendant and, therefore, prosecution should be barred.

Invocation of the doctrine of collateral estoppel is unwarranted in these circumstances. Annot. 9 A. L. R. 3d 203, 214, contains the following explanation of the doctrine of collateral estoppel:

"A common statement of the rule of collateral estoppel is that where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. It has also been said that the doctrine of collateral estoppel operates, following a final judgment, to establish conclusively a matter of fact or law for the purposes of a later lawsuit on a different cause of action between the parties to the original action. To invoke the principle of collateral estoppel there must exist a final judgment rendered upon the merits by a court of competent jurisdiction in a prior action between the parties, upon a

matter within its jurisdiction, and directly determining a question of fact distinctly put in issue and not merely collaterally in question."

In *Ashe v. Swenson* (1970), 397 U. S. 436, 443, 90 Sup. Ct. 1189, 25 L. Ed. 2d 469, the supreme court stated:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when a [sic] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . ."

This statement of the doctrine was cited with approval in *State v. Elbaum* (1972), 54 Wis. 2d 213, 219, 194 N. W. 2d 660. *See also: Hebel v. State* (1973), 60 Wis. 2d 325, 329, 210 N. W. 2d 695, wherein it was stated:

". . . The doctrine of collateral estoppel is a specific application of the doctrine of double jeopardy to a fact and it would seem logical that the fact issue decided must be part of the subject matter of a subsequent prosecution against the same individual for a different offense. . . ."

In the instant case, the parties to the action are obviously not the same as those in the Mathwick trial. The defendant herein had not previously been tried for this offense, or for any other offense growing out of the same incident. Defendant does not argue that acquittal of Mathwick should operate as *res adjudicata* to bar his prosecution. Such a contention would be untenable because the conviction or acquittal of one defendant does not preclude prosecution of a second defendant not a party to the first proceeding. Annot. 9 A. L. R. 3d 203, *supra; Woodford v. Municipal Court, San Diego Judicial District* (1974), 37 Cal. App. 3d 874, 112 Cal. Rptr. 773; *State v. Mondrosch* (1969), 108 N. J. Super. 1, 259 Atl. 2d 725; *State v. Redinger* (1973), 64 N. J. 41, 312 Atl. 2d

129; *United States v. Musgrave* (5th Cir. 1973), 483 Fed. 2d 327, certiorari denied 414 U. S. 1023, 94 Sup. Ct. 447, 38 L. Ed. 2d 315.

Nevertheless, defendant argues that Powers' credibility is an issue of ultimate fact, necessary to the determination of guilt in both cases. Because the jury apparently failed to credit Powers' testimony with respect to the guilt of Mathwick, defendant argues that the state is estopped from prosecuting him.

This argument is without merit for two reasons. First, the credibility of Powers' testimony is not an ultimate issue of fact, the resolution of which would preclude further prosecution. In *Jones v. State* (1970), 47 Wis. 2d 642, 656, 178 N. W. 2d 42, this court cited with approval *People v. Dykes* (1966), 243 Cal. App. 2d 572, 578, 579, 52 Cal. Rptr. 537, wherein it was stated:

" 'A determination either of fact or law cannot be said to be an adjudication unless it settles a matter directly in issue. A question of fact becomes an issue when it is one which must be determined before the ultimate decision can be reached. . . .' "

Powers' testimony was offered as evidence. It was for the jury to determine what weight it would attach to his testimony. *Syvock v. State* (1973), 61 Wis. 2d 411, 414, 213 N. W. 2d 11. Matters of an evidentiary nature are offered to establish the ultimate facts in issue, such as whether a crime was committed, the identity of the perpetrator, and the existence of all of the material elements of the crime charged. The weight to be attached to any particular type of evidence offered is not, in itself, an ultimate determination of fact.

Secondly, the record shows that Powers was not the only witness for the prosecution. Other witnesses were called to corroborate Powers' testimony. While the record in *Mathwick's Case* is not before this court, it is obvious from the record in the instant case that the veracity of

Powers was not necessarily the sole determining factor in the verdict reached by the jury. It is impossible to determine on what basis the jury reached its result, either in the instant case or in *Mathwick's Case.*

Defendant's reliance upon *People v. Taylor* (1974), 12 Cal. 3d 686, 117 Cal. Rptr. 70, 527 Pac. 2d 622, is misplaced. In that case, the defendant was found guilty of first-degree murder. A confederate had been acquitted on the grounds that neither he nor a third party to the crime had possessed the requisite malice aforethought. The two confederates had been inside the store where the murder occurred. Defendant, on the other hand, had merely been waiting outside in the car. The California court found that, under these limited circumstances, where the culpability of defendant was vicariously dependent upon the criminal acts of his confederates, acquittal of the principal brought the doctrine of collateral estoppel into operation. Defendant's prosecution was barred by the failure to prove a requisite element of the crime with respect to his confederate. However, this result was reached because of the vicarious nature of the crime charged. Because the confederate was innocent, defendant's vicarious guilt could not be predicated on the acts of the confederate. We have no such situation in the instant case.

Similarly, the case of *Ashe v. Swenson, supra,* also relied upon by defendant, is inapposite. The facts in that case show that the same defendant had already been tried for the robbery of one of six victims, all of whom had been robbed at the same time and place. At the first trial, the record showed that the only issue was defendant's identity. It was determined that he was not one of the robbers. He was acquitted. He was then prosecuted and found guilty of the robbery of a second of the six victims. The court concluded that the only

issue in the second trial was the identity of the defendant, and because that issue had been previously litigated, defendant's second prosecution was barred by the doctrine of collateral estoppel. The facts and circumstances of that case are inapplicable with respect to the case presently before this court.

The fact that the jury apparently failed to credit Powers' testimony at Mathwick's trial does not bar prosecution of the defendant by reason of the constitutional double jeopardy provision through the doctrine of collateral estoppel.

*Admissibility of Psychiatric Testimony.*

Outside the presence of the jury, an offer of proof was made relating to the reliability of Powers' testimony. Defendant offered the testimony of Dr. Orman, a psychiatrist, who would have testified that persons exhibiting symptoms such as those exhibited by Powers were unreliable and could not be believed under oath. He had formed this opinion on the basis of his review of a written statement given by Powers to police in November of 1973, as well as his observation of Powers on the witness stand for approximately one-and-one-half hours.

The trial court ruled that the psychiatrist could not testify because an inadequate foundation existed for his opinions. The court pointed out that Dr. Orman admitted he had observed nothing unusual about Powers' behavior on the stand. Thus, the opinion was based solely on the statement given by Powers to the police. The court further observed that the full facts and circumstances under which the statement was given were not known.

Defendant contends that failure to admit Dr. Orman's testimony regarding Powers' reliability as a witness constitutes reversible error. He directs the attention of this court to decisions rendered in other jurisdictions where

such testimony was admitted, or where refusal to admit it was held to be reversible error. However, these cases are not applicable to the instant circumstances. This is so because in each case, either a more extensive foundation was shown to exist for the admission of the testimony or no discussion is undertaken regarding the basis on which the medical expert formed his opinion.

When an adequate basis for forming an expert opinion is shown to exist, psychiatric testimony may be admissible, at least as it bears on the capacity of a party to the litigation, even if no personal examination has taken place. *Cf. State v. Cadden* (1972), 56 Wis. 2d 320, 325, 326, 201 N. W. 2d 773. However, the determination to admit or reject testimony of an expert witness is a matter of discretion for the trial court. *Carstensen v. Faber* (1962), 17 Wis. 2d 242, 248, 116 N. W. 2d 161.

In rejecting the offer of proof made in the instant case, the trial court relied, to a certain extent, upon portions of the following analysis contained in McCormick, *Evidence* (hornbook series, 2d ed.), pp. 96, 97, sec. 45:

". . . Undoubtedly, if there is ground for believing that a principal witness is subject to some mental abnormality that may affect his credibility, a need for employment of the resources of psychiatry exist. Doubtless most courts today would accept the principle that psychiatric evidence should be received, at least in the judge's discretion, when its value outweighs the cost in time, distraction, and expense and other disadvantages. The value seems to depend first upon the importance of the appraised witness's testimony, and second upon the opportunity of the expert to form a reliable opinion. This first factor, the importance of the testimony, is a relevant factor at least from the standpoint of policy considerations relating to the feasibility and desirability of subjecting witnesses (even party-witnesses) to an ordeal of psychiatric attack which may or may not be justified. The above-mentioned second factor, opportunity to form a reliable opinion, raises difficulties. An opinion based solely upon a hypothetical question seems almost valueless here.

Only slightly more reliable is an opinion derived from the subject's demeanor and his testimony in the courtroom. Most psychiatrists would say that a satisfactory opinion can only be formed after the witness has been subjected to a clinical examination . . . Only if there is no power to order an examination should expert opinion on the bases of courtroom observation and reading of the record be considered. Even then, permitting opinion based upon such material seems very questionable."

The sole basis on which Dr. Orman formed his opinion was review of the statement given by Powers to the police. Dr. Orman himself indicated that no adverse opinion could be formed from observations of Powers on the witness stand. He also conceded that an absolute diagnosis would require an extensive interview and review of material on the subject's past life and behavior. Under these circumstances, the trial court did not commit error by refusing to admit Dr. Orman's testimony on the basis that an inadequate foundation existed for formation of a reliable opinion.

*Refusal To Permit Psychiatric Examination of Witness.*

After the trial court determined the psychiatric testimony offered was not admissible, counsel for the defendant moved that a psychiatric examination of witness Powers be allowed. This motion was made in the middle of the second day of a two-day trial. Powers had previously testified at the trial of Mathwick. The defendant had been bound over for trial after a preliminary examination held four months before his trial. Much of Powers' testimony had already been completed. Dr. Orman indicated the examination would take at least a couple of hours, possibly longer.

The trial court denied the motion, based upon case law precedent, the time element involved and the lack of a prior or timely motion that the examination be made.

In *State v. Miller* (1967), 35 Wis. 2d 454, 470–472, 151 N. W. 2d 157, the defense moved for a pretrial psychiatric examination of the complaining witness. In an accompanying affidavit, it was alleged that the witness had previously made false accusations and had received psychiatric care. This court found an abuse of discretion in the trial court's refusal to order an examination:

"In *Goodwin v. State* (1902), 114 Wis. 318, 320, 90 N. W. 170, this court stated:

" 'Error is assigned because, after the complaining witness had testified, her cross-examination had been completed, and she had left the stand, on the following day the defendant asked the court, in the exercise of its discretion, to require the complaining witness to submit to an examination to determine whether or not she is afflicted with hysteria. This the court refused, saying that he was satisfied of the competency of the witness, both by previous observation and by her manner of testifying. Counsel responded that they desired it as a basis for evidence bearing upon her credibility, accuracy of memory, etc. In this ruling we discover no error. Counsel cites us no case, and we confidently believe there is no authority, to support the power of a court, after a witness has completed her testimony and left the stand, to compel her to submit to a medical examination, physical or mental. It would be such an invasion of the rights of personal liberty that arguments far more cogent than any suggested would be necessary to convince us of the existence of such power. . . .'

"As pointed out in *Goodwin* in cases where the court has serious doubt of the mental capacity of a witness, in the exercise of its sound judicial discretion, it can order the witness to submit to a medical examination as a condition of allowing the witness to testify. Of course the witness might refuse, but there is no power in the court to compel such an examination.

"Because of the possible indignity of such an examination and the natural reluctance of persons to appear as witnesses if they were to be subjected to such examination, we believe a strong and compelling reason should appear before a trial court in the exercise of its discretion should order a medical examination even as a condition of testifying at the trial. We find no abuse of dis-

cretion in the trial court's denial of the motion for a pretrial psychiatric examination of the complaining witnesses."

It is possible that a compelling reason might have justified granting a pretrial motion to require an examination of Powers as a condition to admission of his testimony, since he was the state's primary witness, and the charge against defendant rested largely on his description of the events that occurred. However, this was true also in *State v. Miller, supra,* wherein this court found no abuse of discretion even though a timely motion was made to conduct an examination of a primary witness. Here, the witness had already completed much of his testimony, and the trial court set forth sound reasons for the exercise of its discretion in denying the motion for the examination.

The trial court did not commit reversible error by refusing to allow the requested psychiatric examination of the witness Powers.

### *Closing Argument.*

Defendant alleges that the prosecutor made an improper comment in his closing argument relating to the fact that the defendant failed to testify. Neither counsel made a motion that the closing arguments be recorded, pursuant to the procedure set forth in sec. 256.55 (3), Stats., and therefore they are not in the record.

During the closing argument of the prosecutor, the defense counsel moved for a mistrial on an alleged improper comment and reconstructed the comment as follows:

"The comment was that the defendant produced no evidence that they didn't go to Minneapolis. . . ."

It was during this trip that the alleged criminal violation occurred.

The prosecutor did not object to this reconstruction at that time but at the hearing on postverdict motions reconstructed the comment to be:

". . . As I remember the comment, it was something to the effect that the defense has not brought any evidence to prove, to negate the proofs that the court—that the state had put in. . . ."

Upon defense's motion for mistrial, the trial court determined that the alleged comment was not prejudicial.

As a general rule, unless closing argument is made a part of the record, this court will not consider an alleged error arising out of that argument. *Smith v. State* (1974), 65 Wis. 2d 51, 54, 221 N. W. 2d 687. However, in *State v. Tew* (1972), 54 Wis. 2d 361, 363, 195 N. W. 2d 615, unrecorded, allegedly improper remarks made in opening argument were reviewed by this court. It was determined that the remarks were sufficiently in the record because defense counsel referred to them in a written motion after verdict, the prosecutor admitted making the remarks, and the trial court ruled on the propriety of the state's argument. Defendant argues that the remarks challenged herein have been similarly preserved, and thus this court may review their potentially prejudicial effect. The record does not support this contention.

The prejudicial effect of a comment which does not specifically refer to defendant's failure to testify depends to a great extent on its exact nature and context. *See generally:* Annot. (1967), 14 A. L. R. 3d 723.

There is disagreement over the exact wording of the comment. It is not in the record. Under these circumstances, any determination that the alleged comment was prejudicial as referring to defendant's failure to testify would be based solely upon speculation. Also a review of the instructions to the jury show that the trial court instructed the jury that no adverse inference should be drawn from the fact that the defendant did not testify.

There is no basis for finding error, and the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.