STATE of Wisconsin, Plaintiff-Respondent,

v.

Jerry W. PETRONE, Defendant-Appellant.†

Supreme Court

*No. 89–1551–CR. Argued January 25, 1991.—Decided May 6, 1991.*

(Also reported in 468 N.W.2d 676.)

†Motion for reconsideration denied.

531

535

For the defendant-appellant there were briefs by *James A. Walrath, Shellow, Shellow & Glynn, S.C.,* Milwaukee and oral argument by *Mr. Walrath.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of conviction entered by the circuit court for Walworth county, John R. Race, Circuit Judge, on a jury verdict finding the defendant guilty of three counts of sexual exploitation of children contrary to sec. 940.203(2), Stats. 1987–88.[1] The court of appeals certified the case to this court. Section (Rule) 809.61, Stats. 1989–90. The court sentenced the defendant to a

---

[1] Section 940.203, Stats. 1987–88, was repealed and recreated as sec. 948.05, Stats. 1989–90, by sec. 29, 1987 Wis. Act 332, effective July 1, 1989.

term of four years' imprisonment with a concurrent term of six years' probation.

The defendant challenges his conviction and sentence on several grounds. First, the defendant challenges various aspects of the seizure of undeveloped photographic film from his home as a violation of the fourth amendment. Second, the defendant argues that his complaint and information failed to charge the required element of scienter. Third, the defendant challenges the jury instruction defining the word "lewd" in sec. 940.203(2). Last, the defendant argues that his presentence report contained inaccurate information and that he was denied a due process hearing to challenge the allegedly inaccurate information.

The court of appeals certified the following two issues: (1) "Does a search warrant which authorizes the seizure of '[a]ll . . . film . . . used in the taking . . . of photographic pictures, involving nude and partially nude female juveniles' include within its scope unmarked and undeveloped rolls of film?" (2) "If a criminal complaint fails to allege requisite scienter, is that failure curable even if scienter is a constitutionally required element of the crime?" We answer both questions in the affirmative. We also reject the defendant's other challenges to the conviction and sentencing and affirm the judgment of conviction and sentence.

I.

The relevant facts of the case follow. On August 6, 1987, a fifteen-year-old female testified before Walworth county Circuit Judge James L. Carlson as part of a request by the state for two search warrants. The warrants were for the search of the defendant's Delavan home and his business, a tavern.

The juvenile testified that on July 29, 1987, she and two other female juveniles posed in costumes, swimsuits and in the nude while the defendant photographed them. Two adult women also participated in the photo session. The juvenile testified that during the photo session the defendant told her and the others to sit on the ground and put their knees up so that they would show parts of their bodies. According to the juvenile's testimony, the defendant used both a Polaroid and a 35 mm camera and told the subjects the photographs were to be used in a brochure for the club, meaning the defendant's tavern.

Search warrants were issued and executed on August 6, 1987, for both the defendant's home and tavern.[2] The search warrant for the defendant's home directed deputies to seize the following items:

> Pink, strapless formal gown, 2-piece blue bathing suit, yellow sheet or slipcover, all camera, film, or photographic equipment used in the taking, processing and development of photographic pictures, involving nude and partially nude female juveniles.

Using the warrant, Walworth county deputies seized a number of items from the defendant's home, including 1,800 still photographs, videotapes, audiotapes, address books and photo albums. They also seized three unmarked film canisters containing undeveloped 35 mm film cartridges. The deputy seizing the film was unable to determine what kinds of photographs, if any, the rolls of film contained. The sheriff's department developed the film the day following the search and found that those rolls of film had been taken at the July 29 photo

---

[2]The search warrant for the defendant's tavern is not at issue here. It directed deputies to seize "photo album(s) containing nude photographs of female juvenile(s) together with developed photographs and 35 mm negatives of same."

session. The developed pictures in slide form were presented as evidence at the defendant's trial.

A criminal complaint was issued on March 2, 1988, charging the defendant with three violations of sexual exploitation of children, that is, with photographing three juveniles while they were engaged in the lewd exhibition of their genital and pubic areas contrary to sec. 940.203(2), Stats. 1987–88.

## II.

We first address the defendant's challenges to the search and seizure. The warrant directed the deputies to search the house and seize, among other things, "all . . . film . . . used in the taking, processing and development of photographic pictures, involving nude and partially nude female juveniles."

The defendant argues that the deputies acted outside the warrant when they seized and later developed unmarked 35 mm film.[3] The defendant argues that under either the terms of the warrant or the plain view exception to the warrant requirement, the deputies had to be able to determine during the search of the house that the film was used in the taking of photographic pictures involving nude or partially nude female juveniles. The defendant reasons that the canisters could not have been lawfully seized under the warrant because nothing linked the canisters to the photographs of the

[3] Approximately 80 photographs were introduced as evidence at the defendant's trial. About 60 of the photographs were developed from the rolls of 35 mm film; 20 were Polaroid photographs found at the defendant's home. The defendant does not challenge the admission of the 20 Polaroid photographs. He maintains that the admission of the 35 mm photographs was critical because of the emphasis the prosecution placed upon them at trial.

juveniles. The seizures were based, asserts the defendant, upon the mere hope that the 35 mm film, when developed, might generate evidence falling within the scope of the warrant. The defendant further contends that the process of developing the films was beyond the authority of the warrant.

The state, as one might expect, disagrees. The state asserts that deputies searching premises pursuant to a warrant for film used in taking illegal photographs may seize undeveloped film for developing and viewing to determine whether it contains the kind of photographs described in the warrant.

The court of appeals characterized this issue as one of first impression in Wisconsin and perhaps nationally. Neither the state nor the defendant cites any case from any jurisdiction involving the seizure of undeveloped film. The research of the court of appeals and this court was similarly unavailing.

■

To determine whether the undeveloped film falls within the scope of a warrant, we examine the words of the warrant, considering the purposes underlying the fourth amendment requirement of particularity. 2 LaFave, *Search and Seizure* sec. 4.6(a), p. 234 (2d ed. 1987). The fourth amendment requires that warrants "particularly describe the place to be searched, and the persons or things to be seized."

■

The fourth amendment's particularity requirement fulfills three objectives. It prevents general searches; it prevents the issuance of warrants on less than probable cause; it prevents the seizure of objects when the warrant describes different objects.[4] As we explain more fully

[4]*Marron v. United States,* 275 U.S. 192, 196 (1927); *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 357 (1931).

below, the warrant in this case fulfills these objectives.

The particularity requirement is especially troublesome when an item to be seized—such as film—is a household item whose use is ordinarily legitimate. In this case, the investigation leading to the search warrant yielded few details specifically identifying the film to be seized. The only way to particularize the description of the film in this case to differentiate between film subject to seizure and film not subject to seizure was to describe the generic class of items, that is film, and set reasonable parameters for the search and seizure, as the warrant did, in terms of the criminal activities in which the film was used. The warrant in this case describes the film as involving nude and partially nude female juveniles. This particularity prevents the law enforcement officers from seizing film obviously unrelated to the unlawful activity described in the warrant.

The warrant in this case described the film to be seized with as much particularity and specificity as the circumstances and the nature of activity under investigation permitted. The juvenile who testified at the hearing to obtain the search warrant stated that a Polaroid and a 35 mm camera were used but did not describe the brand of the film or the camera. The warrant therefore could not describe the type of film or the number of rolls, whether the film had been developed or where the film might be located in the defendant's home, because this information was not available from the investigation when the warrant was obtained.[5]

---

[5]As Professor LaFave notes, "a greater degree of ambiguity will be tolerated when the police have done the best that could be expected under the circumstances, by acquiring all the descriptive facts which reasonable investigation of this type of crime could be expected to uncover and by ensuring that all of those facts were

The warrant was specific enough in this case to prevent a general search, and the specificity in the warrant prevented issuance of the warrant on less than probable cause. The warrant was specific enough to prevent the seizure of objects not described in the warrant. The warrant enabled the searcher reasonably to ascertain and identify the thing to be seized. *United States v. Betancourt,* 734 F.2d 750, 754–55 (11th Cir.), *cert. den.* 461 U.S. 1021 (1984).

Even when the search warrant meets the particularity requirements the search must be conducted reasonably and appropriately limited to the scope permitted by the warrant. Whether an item seized is within the scope of a search warrant depends on the terms of the warrant and the nature of the items seized. Considering the words of the warrant in relation to the particularity requirement and the nature of the items to be seized, we conclude that the deputies acted within the scope of the warrant.

The warrant in this case expressly allowed seizure of film. To locate film of nude and partially nude female juveniles, the deputies were authorized to examine places where the film might have been kept. The deputies could open closets, chests and containers that could reasonably contain film. The deputies found the canisters of undeveloped film in the same room and in close proximity to Polaroid photos of nude female juveniles, supporting the inference that the film may have been shot at the same

included in the warrant." 2 LaFave, *Search and Seizure,* sec. 4.61(a), p. 238 (2d ed. 1987).

At oral argument the defendant's counsel suggested that the warrant might have specified 35 mm film. This reasoning conflicts with the defendant's principal contention that the officers could not seize the film because they did not know its contents.

time and to photograph the same subjects as the Polaroid photos.

The deputies would have to peruse all film found on the premises to determine whether it fell within or outside the scope of the warrant. The deputies did not know whether the film had been exposed or what was depicted on the film. The deputies were not able to determine with certainty at the house whether the film involved nude or partially nude juveniles. Any attempts to examine the rolls of film at the house might have destroyed them. Until the film was developed and examined no one could be sure whether the canisters contained items within the scope of the warrant, that is, film involving nude or partially nude female juveniles. The only way to peruse the film contained in the canisters, which the deputies had a right to do under the search warrant, was to remove the film from the home and develop and view it to determine its relevance to the crime described in the warrant.

The defendant asserts that the warrant required the deputies to make an on-the-scene determination that the film involved nude and partially nude female juveniles. We disagree with the defendant. The warrant does not include a directive that the items must be immediately and definitively identified at the scene of the search. In *United States v. Santarelli*, 778 F.2d 609, 616 (11th Cir. 1985), the court explained that items seized under a warrant could under special circumstances be examined off the premises of the search.

> Given that the officers were entitled to examine the documents while they remained in the home, we cannot see how Santarelli's privacy interest was adversely affected by the agents' examination of the documents off the premises, so long as any items found not to be relevant were promptly returned.

Indeed . . . to require an on-premises examination under such circumstances would significantly aggravate the intrusiveness of the search by prolonging the time the police would be required to remain in the home.

Although the investigation appears to have been thorough, it could not provide specific identifying details of the items to be seized. The generic category of items to be seized, film, had both lawful and unlawful purposes and might require technological processing to determine its relevance to the crime described in the warrant. Considering these factors, we conclude that the deputies acted within the scope of the warrant when they seized the canisters that might reasonably contain film involved in the criminal activities described in the warrant.[6]

The defendant further contends that even if the warrant included the rolls of undeveloped film, developing the film later at the police station was a second, separate search for which a warrant should have been obtained. The defendant argues that the warrant allowed only inspection and seizure of the evidence in "its existing state." We disagree with the defendant. A search warrant does not limit officers to naked-eye

[6]A comparison of the warrants for the home and the tavern lends support to our conclusion that the warrant for the home covered undeveloped film. Film was specifically mentioned in the search warrant for the defendant's home; it was not mentioned in the search warrant for his tavern. The warrant for the tavern authorized the seizure of "photo album(s) containing nude photographs of female juveniles(s) together with developed photographs and 35mm negatives of same." The word "negatives" does not refer to undeveloped film; negatives result when film is developed.

inspections of objects lawfully seized in the execution of a warrant.

Developing the film is simply a method of examining a lawfully seized object. Law enforcement officers may employ various methods to examine objects lawfully seized in the execution of a warrant. For example, blood stains or substances gathered in a lawful search may be subjected to laboratory analysis. *State v. Warren,* 309 N.C. 224, 306 S.E.2d 446, 449 (1983). The defendant surely could not have objected had the deputies used a magnifying glass to examine lawfully seized documents or had enlarged a lawfully seized photograph in order to examine the photograph in greater detail. Developing the film made the information on the film accessible, just as laboratory tests expose what is already present in a substance but not visible with the naked eye. Developing the film did not constitute, as the defendant asserts, a separate, subsequent unauthorized search having an intrusive impact on the defendant's rights wholly independent of the execution of the search warrant. The deputies simply used technological aids to assist them in determining whether items within the scope of the warrant were in fact evidence of the crime alleged.[7] Because the undeveloped film was lawfully seized pursuant to the warrant, the deputies were justified in developing and viewing the film.

The defendant challenges the search and seizure on several other grounds. He argues that the state failed to establish probable cause that illegal photographs would be found at the defendant's home, especially several days

[7]*See, e.g., Commonwealth v. Copenhefer,* — Pa —, 587 A2d 1353 (1991), holding that retrieval of deleted computer files from a computer seized pursuant to a warrant by use of a special program did not violate the fourth amendment.

after the photography session. He claims that the search warrant for the defendant's home was based on mere guess or hunch, not probable cause.

The warrant was issued on the basis of the testimony of one of the female juveniles who had participated in the photography session at the defendant's home and environs. She testified that the illegal Polaroid photographs taken of her were on a table in the defendant's home and that the 35 mm film had not been developed when she left the home on July 29. She did not know where the film would be developed or what had happened to the photographs in the ten days between the photography session on July 29 and her testimony on August 7. The photographs were, she testified, destined to be put in a brochure to promote the tavern.

The defendant argues that this testimony does not support a finding of probable cause that the illegal film or photographs would be found at the defendant's home. We conclude that the circuit court could reasonably infer from the testimony that the defendant kept the photography equipment and film used in the photo session in his home; that the defendant would retain the photographs for a substantial time; and that the photographs and exposed film were either at the defendant's home or at the tavern.

Issuing a search warrant requires only a reasonable probability that evidence will be found at a certain location. In evaluating probable cause, a "grudging or negative attitude by reviewing courts towards warrants is inconsistent with the fourth amendment's strong preference for searches conducted pursuant to a warrant." *United States v. Premises Known as 1007 Morningside Avenue, Sioux City, Iowa,* 625 F. Supp. 1343, 1348 (N.D. Iowa 1985). We conclude that the circuit court was

aware of facts sufficient to show that film used to take illegal pictures of juveniles would probably be found at the defendant's home. *State v. Tompkins,* 144 Wis. 2d 116, 124-25, 423 N.W.2d 823 (1988).

The defendant further argues that the state failed to establish probable cause that the juveniles exhibited their genital or pubic areas to be photographed. After the juvenile testified that she had posed in the nude, the circuit court objected that nudity alone was insufficient to show a violation of the child pornography law. The circuit court stated that the photographs had to be "sexually explicit." The circuit court then questioned the juvenile witness as follows to determine whether the photographs were a lewd exhibition of genitals:

> [Judge]: You have to show a little bit more than that under the Statute. It has to be sexually explicit photographs.
>
> [Assistant District Attorney]: Which includes the last subsection, lude [sic] exhibition of genitals. It doesn't require any sexual activity.
>
> [Judge]: Were you posing or asked to pose in any certain fashion or way in these photographs?
>
> [Witness]: Yes, we were. We had to like sit on the ground and like put our knees up and stuff and just so that we could show parts of our bodies.

The witness's description of the photography session satisfied the circuit court that there was probable cause to believe the defendant had photographed juveniles in the lewd exhibition of their genitals. Although the witness did not describe in exact terms which parts of her body the defendant photographed, her testimony that the juveniles were asked to put their knees up to show parts of their bodies strongly implies that their genital areas were exposed. Probable cause is

not a technical, legalistic concept but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior. *Texas v. Brown,* 460 U.S. 730, 743 (1983); *State v. Wisumierski,* 106 Wis. 2d 722, 739, 317 N.W.2d 484 (1982). Applying the "common sense" test for probable cause, we conclude that the circuit court was justified in finding probable cause that the photographs violated the statute.

The defendant's final argument is that the execution of the search warrant resulted in excessive unconstitutional seizures. While the search warrant directed the deputies to seize film and photographic equipment "involving nude and partially nude female juveniles," the defendant complains that the deputies seized over 1,800 photographs along with undeveloped film rolls and cartridges, seven videotapes, three audiotapes, and the defendant's boat. The defendant urges that in executing the warrant the deputies so flagrantly violated the terms of the warrant that all items seized must be suppressed.

We agree with the defendant that items were seized that were not within the scope of the warrant. The general rule is that items seized within the scope of the warrant need not be suppressed simply because other items outside the scope of the warrant also were seized,[8] unless the entire search was conducted in "flagrant disregard for the limitations" of the warrant.[9]

Although the catalogue of items seized in this case includes numerous items not covered by the warrant, we

---

[8] *United States v. Tamura,* 694 F.2d 591, 597 (9th Cir. 1982); *United States v. Shilling,* 826 F.2d 1365, 1369 (4th Cir. 1987), *cert. denied,* 484 U.S. 1043 (1988).

[9] *United States v. Lambert,* 771 F.2d 83, 93 (6th Cir. 1985), *cert. denied,* 474 U.S. 1034 (1985); *State v. Noll,* 116 Wis. 2d 443, 460, 343 N.W.2d 391 (1984).

conclude that the deputies did not flagrantly disregard the terms of the warrant. The state argues that all the items seized were arguably related to the warrant. Although the deputies seized photos of the juveniles in bikinis and gowns, the photos were of the same juveniles the defendant photographed nude. The photos were related to this crime and were in plain view.

The deputies seized the boat upon which some of the photographs of the nude or partially nude female juveniles were taken along with two address books and three audiotapes which they thought could help identify the juveniles in the photos. The deputies appear to have seized only items they thought were arguably related to the crime described in the warrant.

■■■ The deputies did not conduct the kind of general search condemned in *United States v. Medlin,* 842 F.2d 1194 (10th Cir. 1988). The warrant in that case authorized the seizure of firearms and records of the purchase and sale of firearms. The executing officers seized 130 firearms and 667 items unrelated to the warrant. The court held that the proceeds of the entire search must be suppressed because the officers had "grossly exceed[ed]" the scope of the warrant. *Id.* at 1199. *See also, United States v. Rettig,* 589 F.2d 418 (9th Cir. 1978), suppressing the entire proceeds of a search where officers executed a warrant for marijuana and paraphernalia and seized over 2,000 other items, mostly written material. The deputies in this case did not seize items that were not arguably connected in some way with the illegal activity described in the warrant. We conclude that the warrant was not flagrantly disregarded.

For the reasons set forth, we conclude there was no violation in the execution of the warrant, and we uphold

the circuit court's admission of the photographs into evidence.

## III.

The defendant asserts that the complaint and information are fatally deficient because they omit the essential element of scienter in charging three violations of sexual exploitation of children contrary to sec. 940.203(2), Stats. 1987–88. The defendant asserts that because of this defect the circuit court lacked jurisdiction, the criminal complaint and information should be dismissed, and the conviction vacated.

The defendant was charged with violating sec. 940.203(2), Stats. 1987–88, entitled Sexual Exploitation of Children, that provided as follows:

> No person may photograph, film, videotape, record the sounds of or display in any way a child engaged in sexually explicit conduct.

Section 940.203(2) does not expressly embody the element of scienter. The defendant has consistently argued throughout the proceedings that scienter is a constitutionally required element of the offense and that the statute is constitutionally defective, depriving the circuit court of jurisdiction. The defendant argues that the state's position has changed over the course of the proceeding.[10] In any event, at trial and on appeal the state

---

[10]At the preliminary hearing apparently the state and defendant disagreed whether scienter was a necessary element of the crime. The defendant sought leave to appeal his motion to dismiss on the grounds that scienter was a necessary element. The court of appeals denied the defendant's petition for leave to appeal because "[t]he state concedes that . . . it will be required to establish scienter at trial." Citing *New York v. Ferber,* 458

550

has asserted that either the legislature intended scienter to be an element of the crime[11] or the court will supply this deficiency in the statute to uphold its constitutionality.[12]

---

U.S. 747, 765 (1982), the state argues on appeal that scienter is a constitutionally required element.

[11]The legislative history is not decisive on this issue. On the one hand, the legislative history can be interpreted as indicating that the legislature did not intend scienter to be an element of the offense and deliberately did not use the word "knowing" as an element of the crime. Subsections (1), (3), and (4) of sec. 940.203 punish only conduct that was "knowingly" undertaken; subsection (2) is the only offense that does not contain the word "knowingly."

On the other hand a recent recodification of sec. 940.203 suggests that scienter was always an element of the offense. The legislature recently repealed and recreated sec. 940.203. The new version of the sec. 940.203(2), sec. 948.05, Stats. 1989–90, defines the offense *inter alia* as photographing a child engaged in sexually explicit conduct "with knowledge of the character and content of the sexually explicit conduct involving the child." Section 948.05(1)(b) provides as follows:

> Whoever does any of the following with knowledge of the character and content of the sexually explicit conduct involving the child is guilty of a Class C felony: . . . (b) Photographs, films, videotapes, records the sounds of or displays in any way a child engaged in sexually explicit conduct.

The drafter's note to sec. 948.05 declares that the new law "does retain" knowledge as an element of the crime, thereby implying that sec. 940.203 included an element of scienter or knowledge. Citing *New York v. Ferber*, 458 U.S. 747 (1982), the note states that this inclusion of a knowledge element recognizes that criminal responsibility may not be imposed for the acts prohibited by this statute without some element of scienter on the part of the defendant. See 1987 Wisconsin Act 332, sec. 55 creating sec. 948.05.

[12]The court has interpreted statutes to save them from being

551

We agree with the parties that scienter is a constitutionally required element of the offense charged. We need not decide for purposes of this case whether the legislature intended the statute to include the element of scienter or whether this court would read the element of scienter into the statute to enable the statute to pass constitutional muster.

Prior to trial the court of appeals ruled that the state would be required to establish scienter. The circuit court instructed the jury that the state must prove defendant's knowledge beyond a reasonable doubt.[13] The defendant does not show that he was prejudiced at trial by the omission of scienter in the complaint and information.

The defendant nevertheless argues that the omission of a scienter allegation in the criminal complaint and information is a jurisdictional defect that vitiates the conviction. The court of appeals certified this issue because it detected "two differing strains" running through our cases that need this court's clarification.

In one line of cases pertaining to prosecutions for crimes other than obscenity, the rule is that a complaint or information failing to articulate an element of the

---

declared unconstitutional. See *State ex rel. Chobot v. Circuit Court for Milwaukee County,* 61 Wis. 2d 354, 367, 212 N.W.2d 690 (1973).

[13]At the defendant's request, the circuit court told the jury in its opening instructions that the state had to prove beyond a reasonable doubt that the defendant knew the "conduct being depicted involved sexually explicit conduct of the type alleged." At the close of trial the circuit court explained that the state must prove "that the defendant knew that the conduct depicted in the photographs involved lewd exhibition of the genital or pubic areas."

crime but citing the number of the substantive statute defining the crime is sufficient to support a prosecution as long as the defendant was not prejudiced in any way by the failure of the charging documents to set forth every element of the crime.[14] If the complaint and infor-

[14]See, e.g., *State v. Bachmeyer,* 247 Wis. 294, 19 N.W.2d 261 (1945) (first degree murder); *Clark v. State,* 62 Wis. 2d 194, 214 N.W.2d 450 (1974) (first degree murder); *State v. Nowakowski,* 67 Wis. 2d 545, 227 N.W.2d 697 (1975) (failure to report a campaign contribution; statute on its face did not require intent; court ruled that intent had to be read into statute as an element and proved at trial); *Schleiss v. State,* 71 Wis. 2d 733, 239 N.W.2d 68 (1976) (burglary); *Lambert v. State,* 73 Wis. 2d 590, 243 N.W.2d 524 (1976) (theft by fraud).

But see *Champlain v. State,* 53 Wis. 2d 751, 193 N.W.2d 868 (1972), in which the court held that an information charging armed robbery was fatally defective even though the information referred to the statute by number. *Champlain* has been explained as not conflicting with the general rule because of special characteristics of that case. In *Clark v. State,* 62 Wis. 2d 194, 203, 214 N.W.2d 450 (1974), *Champlain* was distinguished on the ground that the statutory reference "related to the sentencing provisions of the statute and not the substantive section of the statute describing the crime for which the state was prosecuting the defendant." *Champlain* was also distinguished in *Schleiss v. State,* 71 Wis. 2d 733, 738–39, 239 N.W.2d 68 (1976). The court stated that the citation in *Champlain* was to a statute defining two separate and distinct crimes and the information failed to allege the particular crime of which the accused was charged.

These cases comport with sec. 971.26, Stats. 1989–90, that states:

> No Indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant.

The general test of the sufficiency of a complaint or an information is that the accusation is such that the accused may deter-

mation in this case fall within this line of cases, the defendant's argument fails. Although the complaint and information in this case were deficient in charging scienter, they cited the number of the statute defining the crime, and the defendant cannot show he was prejudiced.

In a second line of cases pertaining to prosecutions for an obscenity crime, the rule is that an allegation of scienter in a criminal obscenity complaint or information is a jurisdictional prerequisite, that a complaint or information lacking such an allegation charges no offense known to law, and that proceedings initiated by such a complaint or information are void *ab initio*. The defendant argues that this case involves first amendment rights and is therefore governed by rules of pleading set forth in obscenity cases which also involve first amendment rights.

Our cases have not, however, been consistent in explaining the basis for a different approach to defective pleadings in obscenity and nonobscenity prosecutions. The line of cases distinguishing between pleadings in the two types of crimes begins with *Court v. State,* 51 Wis. 2d 683, 188 N.W.2d 475 (1971), *vacated* 413 U.S. 911 (1973), *affirmed on remand,* 63 Wis. 2d 570, 217 N.W.2d 676 (1974), an obscenity prosecution in which a pleading was alleged to be defective for failing to state the element of scienter. Citing *Smith v. California,* 361 U.S. 147 (1959), the court concluded in *Court v. State* that scienter was a necessary element of the crime of sale of obscene materials, "and it [scienter] must be alleged in the criminal complaint." In that case, however, the court

---

mine whether it states an offense to which the accused is able to plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense. *Blenski v. State,* 73 Wis. 2d 685, 695–96, 245 N.W.2d 906 (1976).

held that the pleading was not defective.[15]

Although the *Smith* case holds that scienter is a constitutionally required element of an obscenity crime, the United States Supreme Court did not require in *Smith* that scienter be alleged in a criminal complaint. In some cases, this court appears to acknowledge that the *Court* case may have misread the *Smith* case to impose as a constitutional requirement that the complaint and information in an obscenity prosecution include the element of scienter.[16] Thus in *Schleiss v.*

[15]In the second case in this obscenity prosecution line of cases, *State v. Schneider,* 60 Wis. 2d 563, 567, 211 N.W.2d 630 (1973), the court concluded that because the complaint charging possession for sale of obscene material did not allege scienter, the proceedings were void *ab initio.* The *Schneider* court relied on the *Court* and *Smith* cases, and on *Champlain v. State,* 53 Wis. 2d 751, 193 N.W.2d 868 (1972), a nonobscenity case, which it interpreted as holding that a criminal pleading which charges no offense is jurisdictionally defective. In *Schneider* the information omitted the scienter element but included the statutory citation. A companion case to *Schneider* was *State v. Green,* 60 Wis. 2d 570, 211 N.W.2d 634 (1973).

This court followed *Schneider* in *State v. Reichert,* 67 Wis. 2d 69, 73–74, 226 N.W.2d 196 (1975), an obscenity case. The *Reichert* court explained *Schneider* as follows: "We held that an allegation of scienter, or criminal intent, in a criminal complaint was a jurisdictional prerequisite in obscenity cases and that, absent such allegation, the complaint charges no offense known to law and the proceedings are void *ab initio.*"

[16]In *Clark v. State,* 62 Wis. 2d 194, 203, 214 N.W.2d 450 (1974), a nonobscenity case, the court stated that *Smith* and *Schneider* "go directly and only to the question of whether scienter is a constitutionally required element in a criminal obscenity statute because it is intimately related to the constitutional scope (first amendment) of the power to bar material as obscene."

See also *Organ v. State,* 65 Wis. 2d 36, 43–44, 221 N.W.2d 823 (1974) and *State v. Nowakowski,* 67 Wis. 2d 545, 569–70, 227

*State,* 71 Wis. 2d 733, 739, 239 N.W.2d 68 (1976), a burglary case, the court characterized this court's special rule for pleadings in obscenity prosecutions as resting on *"the policy of this court in criminal obscenity cases,"* rather than on a federal constitutional mandate.[17]

The most recent discussion of defective pleading in obscenity and nonobscenity prosecutions appears in *Lambert v. State,* 73 Wis. 2d 590, 243 N.W.2d 524 (1976). The *Lambert* court upheld the defective pleadings in theft by fraud and refused to apply the rule developed in the line of cases involving obscenity prosecutions. The *Lambert* court characterized the obscenity prosecution cases as "a peculiar situation where the First Amendment overlay creates a standard of pleading not generally applicable."[18]

The case at bar is not an obscenity case.[19] We could distinguish the cases involving obscenity prosecutions on this basis. We do not, however, rest our holding on this distinction. Upon examining our cases we no longer see any justification for establishing or following a spe-

---

N.W.2d 697 (1975). *Clark, Organ,* and *Nowakowski* can also be interpreted as distinguishing obscenity cases from nonobscenity cases.

[17]*Schleiss* reads *Reichert* and *Schneider* as holding that " 'an allegation of scienter . . . in a criminal complaint was a jurisdictional prerequisite in obscenity cases . . .' [evolving] from the dimensions of first amendment rights as they relate to statutes which control obscene material." 71 Wis. 2d at 739.

[18]The *Lambert* court quoted the *Clark* case interpreting our defective pleading obscenity cases and the United States Supreme Court *Smith* case as going directly and only to the question of whether scienter is a constitutionally required element in a criminal obscenity statute.

[19]Child pornography may be prohibited even if it is not obscene. *New York v. Ferber,* 458 U.S. 747, 757, 761 and n.12 (1982).

cial judicially created rule for pleading criminal obscenity cases in contrast to other criminal cases. The first amendment considerations requiring scienter pertain to the elements of the substantive crime, not to the pleadings. Federal and state cases have not construed the *Smith* case as holding that a charge in an obscenity case is void for failing to state the scienter element.[20]

We conclude that a single rule should govern all criminal cases in which a pleading fails to set forth all

[20]For federal and state cases holding that a pleading in an obscenity case omitting scienter does not void the proceedings, *see, e.g., United States v. Zacher,* 332 F. Supp. 883 (E.D. Wis. 1971) (indictment for transporting obscene material omitted scienter; indictment legally sufficient, but proof of scienter required at trial); *Tallman v. United States,* 465 F.2d 282 (7th Cir. 1972) (indictment for uttering obscene language by radio communication omitted scienter; indictment need not allege scienter if it is proved at trial; collateral attack); *State v. Wein,* 80 N.J. 491, 404 A.2d 302 (1979) (indictment for sale of obscene films upheld even though failed to allege scienter); *Wall Distributors, Inc. v. City of Newport News,* 228 Va. 358, 323 S.E.2d 75 (1984) (upholding indictment citing statute regarding possession of obscene materials with intent to distribute but failing to allege scienter).

Some state courts appear to hold that a charging document omitting an essential element of the crime is not sufficient for any crime. *See, e.g., State v. Oman,* 265 Minn. 277, 121 N.W.2d 616 (1963) (prosecution of bookseller for sale and possession of obscene literature); *State v. Serstock,* 402 N.W.2d 514 (Minn. 1987) (indictment alleging violation of the Minnesota Code of Professional Responsibility did not state a violation of a statute).

Other state courts distinguish between obscenity and nonobscenity prosecutions. *See, e.g., Commonwealth v. Bacon,* 374 Mass. 358, 372 N.E.2d 780 (1978) (indictment for carrying a gun without a license was sufficient without stating element of scienter; obscenity cases distinguished).

557

the elements of the crime but includes a correct citation to the applicable substantive criminal statute. In the present case, the complaint and the information omitted the element of scienter but referred to the correct substantive criminal statute by number. While the statute did not expressly include the element of scienter, the circuit court had construed the statute to include the element of scienter. By citing the statutory number, the pleadings sufficiently alleged all the elements of the offense, even those the court read into the statute.[21]

Prior to the trial, the defendant knew that the prosecution must prove the element of scienter; the jury was instructed that the state must prove scienter. The defendant does not show that he was prejudiced in any way at trial by the omission of scienter in the complaint and information.

Adhering to the rule set forth in the nonobscenity cases, we conclude that the defective complaint and information in this case are legally sufficient.

## IV.

We next address the defendant's challenge to the court's jury instruction regarding the meaning of "lewd" within the statute. Section 940.203(2), Stats. 1987–88, prohibits the following conduct:

> No person may photograph, film, videotape, record the sounds of or display in any way a child engaged in sexually explicit conduct.

The statute defines "sexually explicit conduct" as "lewd exhibition of the genitals or pubic area of any

---

[21]*State v. Nowakowski,* 67 Wis. 2d 545, 571–72, 227 N.W.2d 697 (1975).

person." Wis. Stats. sec. 940.203(6)(b)5 1987–88. The term "lewd" is not defined in sec. 940.203(6)(b)5.

The circuit court gave the following instruction defining "lewd":

> The word "lewd" has a generally well recognized meaning, connoting sexual suggestiveness.
> . . . Mere nudity does not constitute the type of exhibition which is prohibited by the statute.
> . . ..
> Now, examples of sexually suggestive or lewd photographs of a child would be those in which the child is depicted or posed in such a way as to depict or suggest a willingness to engage in sexual activity or a sexually coy attitude. Whether or not the child intended such a pose is not the issue, but rather what a reasonable person viewing a photograph would perceive is being suggested. Now, no expanded writing or written definition of what constitutes a lewd exhibition of the genital areas would encompass all of the uncountable variations which such photographs might take . . .. Just as a written description of the face of a loved one could be read by a third person without that third person being able to see in his or her mind the same mental picture as is in the mind of the person writing the description. Words cannot describe all of the nuances of that which constitutes lewdness. However, . . . with a few general principles in mind, most persons, upon seeing a photograph which is lewd, would be able to agree that it is such.

The defendant argues that the circuit court's instruction to the jury, derived from *United States v. Nemuras,* 567 F. Supp. 87 (D. Md. 1983), *aff'd,* 740 F.2d 286 (4th Cir. 1984), is erroneous because it is a rambling, open ended, and vague definition. The defendant argues that an instruction defining "lewd" in terms of sexually coy mistakenly tells the jury that "lewd" means sexually

shy or bashful rather than inciting lust or sensual desire. The defendant is not reading the instruction properly. The judge did not define "lewd" as sexual coyness. Sexual coyness is part of the explanation of sexual suggestiveness.

The defendant also argues that the circuit court's open-ended reference to the term "lewd" as meaning whatever "most persons" agree to allowed the jurors to create their own standards of culpability and rendered the jury instructions unconstitutionally vague.

The defendant contends that the definition of "lewd" exhibition of genitals promulgated in *State v. Lubotsky,* 148 Wis. 2d 435, 434 N.W.2d 859 (Ct. App. 1988), which was decided after the trial in this case, is the correct definition. The circuit court and the court of appeals in *Lubotsky* defined "lewd" in terms of the dictionary definition—"inciting to lust or lechery." We conclude that the circuit court instructed the jury in this case that "lewd" means sexual suggestiveness, giving "lewd" essentially the same meaning as "inciting to lust or lechery."[22]

■

To determine if the instruction is correct as a matter of law, the instruction must be read in its entirety.[23]

---

[22]In *Lubotsky,* the court approved two other dictionary definitions of "lewd" that are as follows: "inclined to, characterized by, or inciting to lust or lechery" and "inciting to sensual desire or imagination." *Lubotsky,* 148 Wis. 2d at 438.

[23]The defendant argues that parts of the instruction are inaccurate, rendering the whole definition vague. The defendant objects to phrases in the jury instruction taken from *Nemuras,* which included the following: "sexually coy attitude," "sexually suggestive," and "most persons, upon seeing a photograph which is lewd, would be able to agree that it is such." *Nemuras,* 567 F. Supp. at 89–90.

If the overall meaning is a correct statement of the law, then any erroneous part of the instruction is harmless and not grounds for reversal. *Betchkal v. Willis,* 127 Wis. 2d 177, 188, 378 N.W.2d 684 (1985); *State v. Paulson,* 106 Wis. 2d 96, 108, 315 N.W.2d 350, 356 (1982).

After examining cases interpreting similar child pornography laws and the term "lewd," we conclude that no one definition has been established for "lewd." Three concepts are generally included in defining "lewd" and sexually explicit. First, the photograph must visibly display the child's genitals or pubic area. Mere nudity is not enough. Second, the child is posed as a sex object. The statute defines the offense as one against the child because using the child in that way causes harm to the psychological, emotional and mental health of the child. The photograph is lewd in its "unnatural" or "unusual" focus on the juvenile's genitalia, regardless of the child's intention to engage in sexual activity or whether the viewer or photographer is actually aroused. Last, the court may remind the jurors that they should use these guidelines to determine the lewdness of a photograph but they may use common sense to distinguish between a pornographic and innocent photograph. *New York v. Ferber,* 458 U.S. 747, 765 (1982); *United States v. Wiegand,* 812 F.2d 1239, 1243-44 (9th Cir.), *cert. den.,* 484 U.S. 856 (1987); *United States v. Arvin,* 900 F.2d 1385, 1391 (9th Cir. 1990), *cert. den.,* — U.S.—, 111 S. Ct 672 (1991).

In this case, looking at the jury instructions as a whole, we conclude that the circuit court accurately apprised the jury of what "lewd" means. The circuit court told the jurors that mere nudity is not enough—the pictures must display the child's genital area; that the photographs must be sexually suggestive; and that the

jurors may use common sense to determine whether the photographs were lewd.

We conclude that the instruction taken as a whole gave the jury an adequate definition of "lewd."

## V.

The defendant objected to parts of the presentence report containing unattributed allegations whose accuracy was contested, including charges that the defendant sought to falsify statements in a traffic violation case; that the defendant had engaged in prostitution activities and money laundering; that the defendant assaulted people on numerous occasions; and that he had been involved in illegal drugs. The likely effect of this information was to increase the defendant's sentence.[24]

In response to the defendant's objection, the sentencing court declined to rule on the motion or to state on the record what information in the report would be rejected, although the sentencing court agreed that the inclusion of some information in the report was troublesome. The circuit court could have easily avoided raising suspicion that it was considering improper matters by stating on the record what information it would not consider. Unfortunately in explaining its sentencing rationale, the court did not state which information it relied upon and which it did not.

---

[24]In *Bruneau v. State,* 77 Wis. 2d 166, 174–75, 252 N.W.2d 347 (1977), the court summarized an accused's due process rights at sentencing as follows:

(1)  to be present at the hearing and to be afforded the right of allocution,

(2)  to be represented by counsel, and

(3)  to be sentenced on the basis of true and correct information.

562

The circuit court, however, did not mention any particular incidents except those evidenced by convictions for misconduct and assaults alleged by the defendant's ex-wife.

In reviewing sentencing, an appellate court begins with "the presumption that the trial court acted reasonably and with the requirement that the [appellant] must show some unreasonable or unjustifiable basis in the record for the sentence complained of." *Jung v. State,* 32 Wis. 2d 541, 548, 145 N.W.2d 684, 688 (1966), *cert. denied,* 386 U.S. 999 (1967). Sentencing is a matter within the discretion of the circuit court. "There should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth." *State v. Hutnik,* 39 Wis. 2d 754, 764, 159 N.W.2d 733 (1968).

We are satisfied, on the basis of the record, that the circuit court properly exercised its discretion in sentencing the defendant. At the sentencing hearing, the defendant alerted the circuit court to the items in the presentence he considered objectionable. The circuit court agreed with the defendant that "some things in [the presentence report] . . . went beyond what I would expect and would want in a presentence by way of background." The circuit court explained, however, that it was capable of separating the "wheat from the chaff" and that the case would "rise and fall on what I heard in the courtroom." There is nothing in the record to suggest that the circuit court relied upon factors which were "totally irrelevant or immaterial to the type of decision to be made." *Ocanas v. State,* 70 Wis. 2d 179, 187, 233 N.W.2d 457 (1975). *See also, State v. Thompson,* 146 Wis. 2d 554, 566–67, 431 N.W.2d 716 (Ct. App. 1988).

Accordingly we conclude the circuit court did not abuse its discretion.

For the reasons set forth, we affirm the judgment of conviction and sentence.

*By the Court.*—The judgment of the circuit court is affirmed.