884 P.2d 377

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Marian Lois ELLIOTT, Defendant–
Appellant.**

No. 16343.

Intermediate Court of Appeals of Hawai'i.

Jan. 11, 1994.

Certiorari Granted Jan. 31, 1994.

Walter J. Rodby, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Melvin H. Fujino, Deputy Pros. Atty., County of Hawai'i, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and HEEN and WATANABE, JJ.

HEEN, Judge.

Defendant–Appellant Marian Lois Elliott (Defendant) appeals from her bench trial convictions for the offenses of Disorderly Conduct (Disorderly), Hawai'i Revised Statutes (HRS) § 711–1101(1)(b) (1985), Resisting Arrest (Resisting), HRS § 710–1026(1)(a) (1985), and Assault Against a Police Officer (Assault), HRS § 707–712.5(1)(a) (Supp. 1992).[1] We reverse the Disorderly conviction and affirm the Resisting and Assault convictions.

Defendant argues on appeal that (1) the oral charges against her for the Resisting and Assault offenses were legally insufficient,

---

1. On June 4, 1992, Defendant was sentenced to concurrent periods of probation of one year for the Resisting and Assault convictions and six months for the Disorderly conviction. As special terms of probation, Defendant was ordered (1) incarcerated for concurrent terms of 48 hours for the Resisting and Disorderly convictions and thirty days for the Assault conviction; and (2) to write letters of apology to the police officers involved in the case. Execution of the sentences has been stayed pending appeal.

and (2) the evidence was insufficient to support the Disorderly and Assault convictions.[2]

## THE EVIDENCE

Late on the night of June 27–28, 1991, Hawai'i County Police Officer Paula Watai (Officer Watai) responded to a police radio communication that a fight was occurring among a group of males at a Kailua–Kona apartment building. A second dispatch indicated that a gun might be involved. Officer Belinda Kahiwa (Officer Kahiwa) also responded to the communication and arrived at the scene at almost the same time. Although Officer Watai was on duty and in uniform, Officer Kahiwa was neither on duty nor in uniform. Upon arriving, Officer Watai saw Defendant and her husband (Husband) engaged in a loud argument on the walkway outside of their apartment (the apartment). Defendant was yelling and screaming obscenities in a loud voice, and a crowd of about ten people had congregated at the scene.

Officer Kahiwa recognized Defendant and Husband from previous experiences with them. Addressing Husband by name, Officer Kahiwa took his hand and directed him into the apartment in order to separate him from Defendant. As Husband was walking backwards into the apartment, Officer Watai noticed that Husband took a "black and silver" object out of his back pocket and tossed it behind the apartment door. At the same time, Officer Kahiwa heard something hit the inside of the door. Because of the possibility that the object might be the gun reported in the police dispatch, Officer Kahiwa directed Husband back out of the apartment.

Officer Watai entered the apartment to retrieve the object that Husband had tossed behind the door and recovered a pair of nunchaku sticks. Defendant then entered the apartment and grabbed the sticks from Officer Watai. "[A]fter a long struggle[,]" Officer Watai managed to recover the sticks.

During the struggle for the sticks, Defendant yelled profanities very loudly at Officer Watai. Officer Watai then put one handcuff over Defendant's right wrist and told her she was under arrest for disorderly conduct. However, Officer Watai was not able to handcuff Defendant's left wrist because Defendant continually pulled her left arm away and braced her back against the apartment wall. Officer Kahiwa attempted to assist Officer Watai; however, the two officers were still unable to handcuff Defendant. While the officers were trying to handcuff her, Defendant bit Officer Kahiwa's right wrist and attempted to bite Officer Watai. Shortly thereafter, three more police officers arrived and assisted in completing the arrest.

## INSUFFICIENCY OF THE CHARGES

■ Defendant did not challenge the sufficiency of the charges in the lower court. Therefore, our review is governed by the rule that " '[charges] which are tardily challenged [after conviction] are liberally construed in favor of validity.' " *State v. Motta,* 66 Haw. 89, 91, 657 P.2d 1019, 1020 (1983) (quoting *United States v. Pheaster,* 544 F.2d 353, 361 (9th Cir.1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977)). Contrary to Defendant's argument, the rule applies to oral charges. *State v. Vallejo,* 9 Haw.App. 73, 823 P.2d 154 (1992). The "liberal construction standard for post-conviction challenges to [oral charges] means we will not reverse a conviction based upon a defective [oral charge] unless the defendant can show prejudice or that the [oral charge] cannot within reason be construed to charge a crime." *Motta,* 66 Haw. at 91, 657 P.2d at 1020.

■ Generally, where an indictment or information is challenged, the question is whether the charge is specific enough to allow the defendant to prepare his or her defense and to protect him or her against future jeopardy for the same offense. *Carvalho v. Olim,* 55 Haw. 336, 519 P.2d 892 (1974). Where the defendant challenges the charge after trial, and the record shows that the defendant was neither surprised nor

2. The State concedes that the lower court erroneously convicted Defendant of a petty misdemeanor rather than a violation on the disorderly conduct charge. Hawai'i Revised Statutes (HRS) § 711–1101(3) (1985). Nevertheless, Defendant argues the conviction on that charge should be reversed because it is not supported by the evidence.

prejudiced by the claimed omission in the wording of the charge, the charge will be upheld. *See State v. Smith,* 66 Haw. 95, 657 P.2d 1022 (1983).

Defendant's arraignment proceeded as follows:

[PROSECUTOR]: State of Hawai[']i versus Marian Lois Elliott and Paul Anthony Elliott.

THE COURT: Are you Marian Lois Elliott?

[DEFENDANT]: Yes.

THE COURT: Read the charges.

[PROSECUTOR]: Mrs. Marian Elliott on or about the 28th day of June, 1991 in Kona, County and State of Hawai[']i Marian Lois Elliott did cause physical inconvenience or alarm to member or members of the public by recklessly creating a risk thereof or making unreasonable noise thereby committing the offense of disorderly conduct in violation of Section 711–1101(1)(b) Hawai[']i Revised Statutes as amended.

On or about the 28th day of June, 1991 in Kona, County and State of Hawai['], Marian Lois Elliott attempted to prevent a Peace Officer acting under color of his official authority from effecting an arrest by using or threatening to use physical force against the peace officer or another thereby committing the offense of resisting arrest in violation of Section 710–1026(1)(a) Hawai[']i Revised Statutes as [a]mended.

On or about the 28th day of June, 1991 in Kona, County and State of Hawai[']i Marian Lois Elliott intentionally, knowingly [or] recklessly caused bodily injury to Officer . Belinda Kahiwa by biting her thereby committing the offense of assault in the third degree, assault of police office [sic] violation of Section 707–712.5 Hawai[']i Revised Statutes as [a]mended.

THE COURT: Do you understand those charges Ma'am?

[DEFENDANT]: Yes.

■ Defendant argues that (1) the Resisting charge was required to but did not allege that she "intentionally resisted arrest[;]" and (2) the Assault charge was required to but did not allege that the police officer who was assaulted was engaged in the performance of her duties. Therefore, Defendant contends, those convictions must be reversed. We disagree.

First, Defendant has not indicated how she was surprised or prejudiced by the omissions, and the record does not show that she was hampered in her defense.

The question, then, is whether the oral charges can reasonably be construed to charge Defendant with the offenses of Resisting[3] and Assault.[4] We conclude that they can.

We have found no precedent in this jurisdiction directly on point. However, in our view, the ruling in *State v. Petrone,* 161 Wis.2d 530, 468 N.W.2d 676, *cert. denied,* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991), is applicable here. In *Petrone,* the trial court's rejection of defendant's *pretrial* challenge to the indictment, which was based on the failure to allege the essential element of scienter, was affirmed. The Supreme Court of Wisconsin held that the indictment's reference to the statute outlining the offense was sufficient to supply the omitted element of scienter, as long as the defendant was not prejudiced in any way by the failure of the charging documents to set forth every element of the offense.

Similarly, the oral Resisting and Assault charges in this case, in addition to the factual allegations constituting the offenses, specifically referred to the statutes defining the offenses, and Defendant has claimed no prejudice resulting from the deficiencies in the

---

3. HRS § 710–1026(1)(a) (1985) reads as follows:

**Resisting arrest.** (1) A person commits the offense of resisting arrest if he intentionally prevents a peace officer acting under color of his official authority from effecting an arrest by:
(a) Using or threatening to use physical force against the peace officer or another[.]

4. HRS § 707–712.5(1)(a) (Supp.1992) reads as follows:

**Assault against a police officer.** (1) A person commits the offense of assault against a police officer if the person:
(a) Intentionally, knowingly, or recklessly causes bodily injury to a police officer who is engaged in the performance of duty[.]

oral charge. In our view, the statutory reference was sufficient, in accordance with the liberal rule of construction outlined above, to provide the necessary element missing from the charges so as to sufficiently state the offenses charged against Defendant.

## INSUFFICIENCY OF THE EVIDENCE

■ In reviewing a claim that the evidence was insufficient to support a conviction, the rule is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact. *State v. Ildefonso*, 72 Haw. 573, 827 P.2d 648 (1992). Even if it appears that the verdict might be deemed contrary to the weight of the evidence as so considered, the verdict will be upheld if there is substantial evidence to support it. *Id.* Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion. *State v. Lima*, 64 Haw. 470, 643 P.2d 536 (1982).

### Disorderly

HRS § 711–1101(1)(b) provides:

**Disorderly conduct.** (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he:

\* \* \*.

(b) Makes unreasonable noise[.] [5]
(Footnote added.)

Citing *State v. Faulkner*, 64 Haw. 101, 637 P.2d 770 (1981), Defendant argues that the State failed to prove that she intended to cause physical inconvenience or alarm or recklessly created a risk thereof to a member or members of the public. We agree.

Although the fact situation in *Faulkner* is considerably different from this case, the quantum of proof established there for a disorderly conduct case is applicable here. In *Faulkner*, the defendant's conviction was overturned by the supreme court because the state had not produced any proof "that the defendant's conduct had the effect of causing actual physical inconvenience to any member of the public." *Id.* at 104, 637 P.2d at 773.

■ In this case, also, the State failed to satisfy its burden. The disorderly arrest was based on Defendant's actions within the apartment after the police arrived. There is nothing in the record to indicate what effect Defendant's actions within the apartment may have had on the people outside the apartment or elsewhere in the apartment building.

### Assault

■ After the close of final arguments, the trial judge made the following statement:

THE COURT: But the Statute dosen't [sic] require the State to prove there was knowledge that the person that was assaulted was a police officer.

Based on that, Defendant argues that "the trial court did not hold the [S]tate to the proper standard of proving each and every element of an offense beyond a reasonable doubt. The State should have been required to prove, beyond a reasonable doubt, that [Defendant] knew that [Officer] Kahiwa was a police officer. Because the trial court violated these principles, this court should reverse [the conviction.]"

The argument is without merit.

First, Defendant has taken the judge's statement out of context. The statement was made at the close of final argument and the following dialogue with defense counsel ensued:

MR. GIANOTTI: [The statute] says they [sic] must knowingly assault a police officer.

THE COURT: Intentionally, knowingly, or recklessly.

5. According to HRS § 711–1101(2) (1985), noise is unreasonable

if considering the nature and purpose of the person's conduct and the circumstances known to him, including the nature of the location and the time of the day or night, his conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation[.]

MR. GIANOTTI: Assault a police officer. And how can you intentionally assault someone you don't know is a police officer?

\* \* \* \* \* \*

MR. GIANOTTI: That's not the testimony in this case Judge. The testimony in this case was there were about ten people outside that there was a big halabaloo [sic] going on and when my Client saw someone enter her apartment she saw someone behind her door, she went in to stop this. That turned out to be Watai, next thing she knows someone in civlian [sic] clothes has got her arm which is causing her extreme pain, how did she know it was not just some of these people standing outside that was [sic] grabbing her and she is in extreme pain, she dosen't [sic] know what is going on, so I think there cannot be intent to if she bit someone standing there in civilian clothes in a hassel [sic] like this.

THE COURT: How about recklessness?

MR. GIANOTTI: I don't know if that was recklessness Judge, she is in extreme pain[.]

\* \* \* \* \* \*

THE COURT: But you can [sic] issolate [sic] that particular moment in time, you have to look at all the circumstances, and the circumstances as I see them is [sic] that your Client was involved in some argument with people outside and when police arrived in order to hide a weapon Mr. Elliott the Defendant's husband threw the weapon inside a door, the police officer thought it was a weapon she went to get it and your Client went to stop her from getting it and then the police officer attempted to arrest her, she started resisting arrest, struggled, another police officer assisted in the arrest and she bit the police officer.

I don't think the Statute requires the State to prove that the defendant knows that the person that is being bitten is a police officer.

I think the State must prove beyond a reasonable doubt that the defendant intentionally, knowingly or recklessly causes bodily injury to a police officer.

\* \* \* \* \* \*

Based on those facts the Court would find that the Defendant did intentionally, knowingly or recklessly cause bodily injury to a police officer who was engaged in performance and of her duty. [sic]

HRS § 707–712.5(1)(a) states that the offense of assault against a police officer is committed when a person "[i]ntentionally, knowingly, or recklessly causes bodily injury to a police officer who is engaged in the performance of duty[.]" Thus, it is clear from the entire dialogue that the trial judge did not relieve the State of its burden of proof.

Viewed in the light most favorable to the State, the testimony of Officers Watai and Kahiwa was sufficient to support a conclusion that Defendant knew that Officer Kahiwa was a police officer. When Officer Watai arrived at the scene of the altercation, she said, "The police. What's going on?" Officer Watai voiced the identification because Officer Kahiwa was not in uniform. Officer Kahiwa testified that she had met both Defendant and Husband on at least one prior occasion. Although Defendant testified that she did not know that Officer Kahiwa was a police officer and denied any prior contact with her, the trial court deemed the police officers' testimony more credible and we are bound by the court's assessment. *Ildefonso.*

## CONCLUSION

For the foregoing reasons, we affirm Defendant's conviction for the offenses of resisting arrest and assaulting a police officer. However, we reverse Defendant's conviction for disorderly conduct.